## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY

WILLIAM BOWEN, and AMY
BRASHER, individually and on behalf
of all others similarly situated,

*Plaintiffs*,

v.

PAXTON MEDIA GROUP, LLC,

*Defendant*.

Case No.   5:21-cv-143-TBR

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

### CLASS ACTION COMPLAINT

Plaintiffs William Bowen and Amy Brasher (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to themselves and on information and belief as to all other matters, by and through their undersigned counsel, hereby file this Class Action Complaint against Defendant Paxton Media Group, LLC ("Defendant," "Paxton," or the "Company").

## I.   NATURE OF THE ACTION

1.      Unauthorized third-parties infiltrated and accessed the Company's inadequately protected computer systems between February 26, 2021, and March 20, 2021. During that time, the unauthorized third-parties obtained the protected personal information of Paxton's current and former employees by accessing Paxton's computer systems and copying their personally identifiable information ("PII"). The PII that was obtained reportedly included employees' names, dates of birth, Social Security numbers, driver's license numbers or state ID numbers, financial

account and/or routing numbers, health insurance information, taxpayer identification numbers, and credit card numbers and/or expiration dates (the "Data Breach"). [1]

2.      On information and belief, the unauthorized third parties stole the PII of at least 20,835 current and former employees of Paxton.

3.      According to Paxton's notice to state attorneys general advising of the Data Breach, Paxton reportedly identified suspicious activity on its computer systems on March 20, 2021 but did not advise affected individuals of the breach until more than three (3) months later, and in some cases four (4) months later.

4.      On or about June 24, 2021, Paxton began mailing breach notifications to affected current and former employees.  According to the notice letter Paxton sent to affected individuals, Paxton identified suspicious activity on its computer systems in March and opened an investigation.  Paxton's investigation determined the company suffered a cyberattack that allowed "an unauthorized actor" to copy information from Paxton's computer system between February 26 and March 20, 2021.  Paxton's investigation found that personal information on its current and former employees was in the compromised systems, and that while specific details vary for the affected individuals, "the scope of the information potentially includes individuals' name, date of birth, Social Security number, driver license number or state ID number, financial account and/or routing number, health insurance information, taxpayer identification numbers, and credit card numbers and/or expiration dates."[2]

5.      On information and belief, Plaintiffs' and Class members' PII was stolen in the cyberattack.  Plaintiffs' and Class members' PII will now be used for criminal purposes, such as

_____

[1] *Paxton Newspaper Employees' Data Copied, Company Reveals*,
https://www.arkansasbusiness.com/article/136757/paxton-newspaper-employees-data-copied-company-reveals (last accessed September 10, 2021).
[2] *Id.*

fraudulent text messaging schemes, email scams, identity theft and fraudulent purchases – including phishing, which is a criminal attack performed by cybercriminals to obtain sensitive information such as online passwords, by impersonating a reliable entity in a digital text or email communication – and sold by the actors responsible for the Data Breach to other criminals on the dark web.

6.      Paxton's conduct – failing to take adequate and reasonable measures to ensure that its employee data was protected, failing to take available steps to prevent and stop the Data Breach, failing to take adequate measures to detect the Data Breach, failing to provide timely notice of the Data Breach so that a month had passed before providing its employees and former employees with notice of the Data Breach, and enabling the actors to execute the Data Breach and steal Plaintiffs' and Class members' PII – has caused substantial harm and injuries to its own employees and former employees.

7.      Paxton's material failures put Plaintiffs' and Class members' PII and interests at serious, immediate, and ongoing risk and, additionally, caused costs and expenses to Plaintiffs and Class members associated with time and money spent as a result of taking time and incurring costs to address and attempt to ameliorate, mitigate and deal with the actual and future consequences of the Data Breach.

8.      As a result of the Data Breach, Plaintiffs and Class members have already suffered damages. For example, now that their PII has been released into the criminal cyber domains, Plaintiffs and Class members are at imminent and impending risk of identity theft. This risk will continue for the rest of their lives, as Plaintiffs and Class members are now forced to deal with the danger of identity thieves possessing and using their PII. Additionally, Plaintiffs and Class

members have already lost time and money responding to and mitigating the impact of the Data Breach, which efforts are continuous and ongoing.

9.      Plaintiffs bring this action individually and on behalf of the Class and seek actual damages, statutory damages, punitive damages, and restitution, with attorney fees, costs, and expenses, and further sue Defendant for, among other causes of action, negligence, breach of implied contract, invasion of privacy, breach of confidence and unjust enrichment. Plaintiffs also seek declaratory and injunctive relief, including significant improvements to Paxton's data security systems and protocols, future annual audits, Defendant-funded long-term credit monitoring services, and other remedies as the Court deems necessary and proper.

## II.      JURISDICTION AND VENUE

10.     This Court has diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a class action involving more than 100 class members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and many members of the class are citizens of states different from Defendant.

11.     The Court has personal jurisdiction over Paxton because Defendant is headquartered in this District and Defendant conducts substantial business in Kentucky and this District through its headquarters, offices, parents, and affiliates.

12.     Venue is proper in the Western District of Kentucky District under 28 U.S.C. § 1391(b)(1) because Defendant maintains its principal place of business in this District and therefore resides in this District pursuant to 28 U.S.C. § 1391(c)(2).  A substantial part of the events and omissions giving rise to this cause of action occurred in McCracken County, Kentucky. Therefore, venue is properly placed in the Paducah Division of the United States District Court for the Western District of Kentucky.

## III.   PARTIES

### Plaintiffs

13.     Plaintiff Bowen is a citizen of Virginia Beach the State of Virginia.   Virginia Beach is a city and is not part of any county in Virginia.  He received notice from Paxton on or about July 28, 2021, informing him of the Data Breach.

14.     Plaintiff Brasher is a citizen of Greene County in the State of Arkansas.   She received notice from Paxton on or about June 24, 2021, informing her of the Data Breach.

15.     Plaintiffs bring this action on behalf of all persons whose PII was compromised as a result of Paxton's failure to: (i) adequately protect the PII of Plaintiffs and Class members; (ii) warn Plaintiffs and Class members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected PII using reasonable and effective security procedures free of vulnerabilities and incidents.   Defendant's conduct amounts to negligence and violates state and federal laws.

16.     Plaintiffs and Class members have suffered injury as a result of Paxton's conduct. These injuries include: (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; and (iv) the continued and certainly increased risk to their PII, which may remain backed up in Paxton's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

17.     Paxton obtained and continues to maintain Plaintiffs' PII and has a legal duty and obligation to protect that PII from unauthorized access and disclosure.  Plaintiffs would not have

entrusted their PII to Defendant had they known that Paxton would fail to maintain adequate data security.  Plaintiffs' PII was compromised and disclosed as a result of the Data Breach.

18.     As a result of the Data Breach, Plaintiffs have already spent, and anticipate spending, considerable time on an ongoing basis to try to mitigate and address harms caused by the Data Breach.  As a result of the Data Breach, Plaintiffs will continue to be at increased risk of identity theft and fraud for years to come.

19.     Like Plaintiffs, the other Class members have a continuing interest in ensuring that their PII is protected and safeguarded from future breaches.

20.     The injuries suffered by Plaintiffs and Class members as a direct result of the Data Breach include one or more of the following:

     a.   unauthorized use of their PII;

     b.   theft of their PII;

     c.   costs associated with the detection and prevention of identity theft and unauthorized use of their PII;

     d.   damages arising from the inability to use their PII;

     e.   time spent and costs associated with the loss of productivity or the enjoyment of one's life from taking time to address and attempt to ameliorate, mitigate and deal with the actual and future consequences of the Data Breach, including researching the potential impact of the Data Breach, evaluating and enrolling in credit monitoring, purchasing identity protection, reviewing bank account statements, credit card statements, credit reports, and online accounts, evaluating implementation of a credit freeze, and the stress, nuisance and annoyance of dealing with all issues resulting from the Data Breach;

    f.  damages arising from the theft of their PII, including addressing identity theft and fraudulent accounts and loans;

    g.  damages to and diminution in value of their PII entrusted to Paxton by virtue of their employment by Defendant;

    h.  the loss of Plaintiffs' and Class members' privacy; and

    i.  ascertainable losses in the form of deprivation of the value of their PII for which there is a well-established and quantifiable national and international market.

**Defendant**

21.    Defendant Paxton is a Kentucky company with its principal place of business at 201 South 4th Street, Paducah, McCracken County, Kentucky, 42003.  Paxton's agent for service of process is James Paxton, 201 South 4th St, Paducah, Kentucky, 42003. Paxton operates as a publishing business and owns approximately thirty (30) daily newspapers in the Midwest and South United States, including its flagship The Paducah Sun (Kentucky) and The Herald-Sun (Durham, North Carolina).[3]  Paxton also owns several dozen weekly papers and more than 100 free papers, as well as a television station in Paducah, Kentucky.[4]  The Company owns over 100 publications across 14 states.[5]

22.    Paxton makes sizeable profits at the expense of its employees; however, Paxton betrayed the trust of its employees by putting their PII at risk of attack by cybercriminals. Paxton's actions and/or inaction exposed its employees' PII, including highly sensitive PII, to cyberattack.

---

[3] *See* https://www.dnb.com/business-directory/company-profiles.paxton_media_group_llc.c03374c5f73cc13ba562f66dcd5cc806.html (last accessed September 10, 2021).
[4] *Id*.
[5] *Paxton Newspaper Employees' Data Copied, Company Reveals*,
https://www.arkansasbusiness.com/article/136757/paxton-newspaper-employees-data-copied-company-reveals (last accessed September 10, 2021).

Through this lawsuit, the numerous affected current and former employees who entrusted their PII to Paxton have a voice in Plaintiffs.

## IV.  STATEMENT OF FACTS

### The Data Breach

23.  Between February 26, 2021, and March 20, 2021, Paxton's computer systems were subject to a cyberattack through which unauthorized third-party cybercriminals gained access to Plaintiffs' and Class members' PII, including highly sensitive Social Security numbers, financial account and routing numbers, and credit card numbers, among others.

24.  Paxton discovered the Data Breach on March 20, 2021, but did not begin notifying affected individuals until, at the earliest June 24, 2021, several months after learning of the Data Breach.

25.  On or about June 24, 2021 – three (3) months after first learning of the Data Breach – Paxton began sending out Notices of Data Privacy Event to its current and former employees whose information was accessed in the Data Breach.

26.  It is apparent from the various notices and sample notices of the Data Breach sent to Plaintiffs, the Class, and state Attorneys General that the PII contained within its computer systems was not adequately secured and protected.

27.  Following discovery of the Data Breach, Paxton began to investigate and address the Data Breach.  Based upon the investigation, the attackers were able to access certain computer systems containing the PII at issue.

28.  Upon information and belief, the unauthorized third-party cybercriminals gained access to the PII with the intent of engaging in misuse of the PII, including marketing and selling Plaintiffs' and Class members' Personal Information on the dark web.

29. Despite the severity of the Data Breach, Paxton has not adequately protected Plaintiffs and the Class. For example, upon information and belief, in the Data Breach Notice, Paxton only provided twelve (12) months of identity theft and credit monitoring protection and only for those individuals whose Social Security numbers were exposed.

30. In effect, Paxton is shirking its responsibility for the harm and increased risk of harm it has caused Plaintiffs and members of the Class, including the distress and financial burdens the Data Breach has placed upon the shoulders of the Data Breach victims.

31. To make matters worse, Paxton's attackers gained access to, and possession of, Plaintiffs' and Class members' PII. While many data breach events merely involve the attacker gaining access to the computer or network without meaningful access to the victims' information, in this particular attack on Paxton's systems, hackers gained access to *and copied* Plaintiffs' and Class members' highly sensitive PII, including Social Security numbers and bank account and other financial information.

32. Paxton failed to adequately safeguard Plaintiffs' and Class members' PII, allowing cyber criminals to access this wealth of priceless information for several months before warning the criminals' victims to be on the lookout, and now offer them almost no remedy or relief.

33. Paxton failed to spend sufficient resources on cybersecurity training and adequate data security measures and protocols.

34. Plaintiffs and Class members were required to provide their PII to Paxton as a condition of their employment and with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

35.     The stolen PII at issue has great value to the cyber-attackers, due to the large number of individuals affected and the fact that financial and bank account information and Social Security numbers were part of the data that was compromised. Indeed, the PII obtained in the Data Breach is not easily changeable or replaceable, such as credit and debit card information.

**Plaintiff Bowen's Experience**

36.     Plaintiff Bowen worked for Paxton in Arkansas from 2006 to 2007 as a copy and page editor and then as a beat writer.

37.     As a condition of his employment, Plaintiff Bowen provided his personal identifying information to Defendant Paxton, including his name, contact information, and Social Security number, among other information.

38.     Although Paxton discovered the Data Breach on March 20, 2021, Plaintiff Bowen was not notified of the Data Breach until sometime after July 28, 2021.

39.     According to the Notice of Data Incident dated July 28, 2021 (the "Data Breach Notice"), sent by Defendant Paxton to Plaintiff Bowen, Plaintiff Bowen's personal information, which included his Social Security number and name, were exposed in the Data Breach, and Defendant Paxton learned of same on March 20, 2021.

40.     After receiving the Data Breach Notice, Bowen spent more than fifteen (15) hours dealing with the consequences of the Data Breach and continues to spend many hours dealing with the Data Breach, including reviewing and monitoring his bank accounts, credit card accounts, credit reports and other online accounts, researching the potential impact of the Data Breach, evaluating freezing his credit with credit reporting agencies and credit protection services, enrolling in credit monitoring services, and purchasing additional identity protection through

Identity Guard at a cost of $330 per year. Plaintiff Bowen is currently in the process of gathering the information necessary to implement a freeze on his credit.

41.     Plaintiff Bowen's increased concerns are further enhanced by recent "phishing" correspondence that he received after receiving the Data Breach Notice, including an apparently fraudulent text message purporting to be from Citibank warning that his Citibank credit card account was past due and providing a link through which to make payment.

42.     Plaintiff Bowen has suffered out-of-pocket expenses, lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has increased concerns for the loss of his privacy, which he would not have suffered had Defendant implemented the necessary and proper safeguards to protect its current and former employees' PII from theft.

43.     Plaintiff Bowen has a continuing interest in ensuring that his PII, which, upon information and belief, remains in Paxton's possession, is protected and safeguarded from future breaches.

**Plaintiff Brasher's Experience**

44.     Plaintiff Brasher worked for Paxton in Arkansas from 2006 to 2007 as a graphic designer.

45.     As a condition of her employment, Plaintiff Brasher provided her personal identifying information to Paxton.

46.     Although Defendant Paxton discovered the Data Breach on March 20, 2021, Brasher was not notified of the Data Breach until on or after June 24, 2021.

47.     According to the Data Breach Notice, dated June 24, 2021, sent by Paxton to Plaintiff Brasher, Defendant determined on May 25, 2021 that Brasher's personal information,

including her name, date of birth, Social Security number, and driver license number / state ID number, were exposed in the Data Breach.

48.     After receiving the Data Breach Notice, Plaintiff Brasher has spent more than twenty (20) hours, and regularly continues to spend many hours, dealing with the consequences of the Data Breach, including reviewing and monitoring her bank accounts and credit card accounts, evaluating freezing her credit with credit reporting agencies and credit protection services, evaluating enrolling in credit monitoring, and otherwise dealing with the consequences of the Data Breach, including a fraudulent bank account and a fraudulent Small Business Administration ("SBA") loan opened in her name by criminals utilizing her personal information after the Data Breach.

49.     Shortly after receiving the Notice of Data Incident, Plaintiff Brasher received notification through a credit monitoring service of an inquiry from the SBA.  She contacted the SBA, which confirmed a loan had been taken out in her name using her Social Security number, address, and birthdate.  This loan was fraudulent.  It was obtained without Plaintiff Brasher's knowledge or consent.  Similarly, Plaintiff Brasher also received two account statements from BMO Harris Bank N.A. documenting a checking account opened in her name.  This checking account was fraudulent.  It was opened without Plaintiff Brasher's knowledge or consent. Plaintiff Brasher continues to spend time and effort dealing with the SBA and her bank with respect to these fraudulent occurrences.

50.     Plaintiff Brasher has suffered identify theft, lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has increased concerns for the loss of her privacy, which she would not have suffered had Defendant implemented the necessary and proper safeguards to protect its current and former employees' PII from theft.

51.     Brasher has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**Paxton's Data Security Safeguards Were Inadequate**

52.     Paxton is required to protect Plaintiffs' and Class members' PII, and further, to handle any data breach of the same in accordance with applicable federal and state law.

53.     In addition to its obligations under federal and state law, Defendant owed a duty to Plaintiffs and Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.  Defendant owed a duty to Plaintiffs and Class members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the PII of the Class.

54.     Paxton owed a duty to Plaintiffs and the Class to design, maintain, and test its computer systems and networks to ensure that the PII in Defendant's possession was adequately secured and protected.

55.     Paxton owed a duty to Plaintiffs and the Class to create and implement reasonable data security practices and procedures to protect the PII in its possession.

56.     Paxton owed a duty to Plaintiffs and the Class to implement processes that would detect a breach on their data security systems in a timely manner.

57.     Paxton owed a duty to Plaintiffs and the Class to act upon data security warnings and alerts in a timely fashion.

58.     Paxton owed a duty to Plaintiffs and the Class to disclose if its computer systems and data security practices were inadequate to safeguard individuals' PII from theft because such an inadequacy would be a material fact in the decision to entrust PII with Defendant.

59.     Paxton owed a duty to Plaintiffs and the Class to disclose in a timely and accurate manner when data breaches occurred.

60.     Paxton owed a duty of care to Plaintiffs and the Class because they were foreseeable and probable victims of any inadequate data security practices.

61.     Plaintiffs and other Class members relied on Paxton to implement and maintain systems that kept their PII safe.   Defendant had a duty to keep its employees' PII safe, particularly given the highly sensitive nature of the information stored on Defendant's computer systems. Defendant failed to comply with this duty.

**Cyber Criminals Will Use Plaintiffs' and Class Members' PII for Nefarious Purposes**

62.     Plaintiffs' and Class members' highly sensitive PII is of great value to hackers and cyber criminals, and the data stolen in the Data Breach can be used in a variety of ways for criminals to exploit Plaintiffs and the Class members and to profit off their misfortune and stolen information. The cybercriminals' motives for the Data Breach were purely nefarious and malicious in nature: their one goal was to access Paxton's systems in order to obtain valuable PII to sell on the dark web.

63.     Every year, identity theft causes tens of billions of dollars of losses to victims in the United States.[6]  For example, with the PII stolen in the Data Breach, including Social Security numbers and bank account information, identity thieves can open financial accounts, apply for

---

[6] *Facts + Statistics: Identity Theft and Cybercrime*, Insurance Info. Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity") (last accessed on September 10, 2021).

credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.[7] These criminal activities have and will result in devastating financial and personal losses to Plaintiffs and Class members. Indeed, Brasher has already had an SBA loan fraudulently obtained in her name. Given the timing of the data breach and the fraudulent SBA loan, it is clear the Data Breach and the fraudulent SBA loan are causally connected.

64.     PII is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it and trade the information on the cyber black-market for years.

65.     These risks are both certainly impending and substantial. As the FTC has reported, if hackers get access to personally identifiable information, they will use it.[8]

66.     Hackers may not use the information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[9]

---

[7] *See, e.g.*, Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-anidentity-thief-can-do-with-your-social-security-number-108597/ (last accessed September 10, 2021).

[8] Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24, 2017), https://www.consumer.ftc.gov/blog/2017/05/how-fast-willidentity-thieves-use-stolen-info (last accessed September 10, 2021).

[9] *Stolen Laptops Lead to Important HIPAA Settlements*, U.S. Dep't of Health and Human Services (Apr. 22, 2014), available at
https://wayback.archiveit.org/3926/20170127085330/https://www.hhs.gov/about/news/2014/04/22/stolenlaptops-lead-to-important-hipaa-settlements.html (last accessed September 10, 2021).

67.     For instance, with a stolen Social Security number, which is part of the PII compromised in the Data Breach, someone can open financial accounts, get medical care, file fraudulent tax returns, commit crimes, and steal benefits.[10]

68.     If cyber criminals manage to access financial information, health insurance information, and other personally sensitive data—as they did here—there is no limit to the amount of fraud to which Defendant may expose the Plaintiffs and Class members.

### Damages Sustained by Plaintiffs and Class Members

69.     Plaintiffs and the other members of the Class have suffered injury and damages, including, but not limited to one or more of the following:

   a.   unauthorized use of their PII;

   b.   damages arising from the inability to use their PII;

   c.   monetary costs associated with their attempts to ameliorate, mitigate and deal with the actual and future consequences of the breach, including the freezing of their credit, and enrolling in credit or identity monitoring services;

   d.   time spent and monetary and other costs associated with the loss of productivity or the enjoyment of one's life from taking time to address an attempt to ameliorate, mitigate and deal with the actual and future consequences of the Data Breach, and the stress, nuisance and annoyance of dealing with all issues resulting from the Data Breach (which time spent on those activities Plaintiffs and Class members could have been working and earning a living, therefore suffering further actual injury);

---

[10] *See, e.g.*, Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-anidentity-thief-can-do-with-your-social-security-number-108597/        (last accessed September 10, 2021).

    e.   the imminent and impending injury flowing from actual and potential fraud and identity theft posed by their PII being placed in the hands of criminals;

    f.   damages to and diminution in value of their PII entrusted to Defendant for the sole purpose of purchasing products and services from websites operated by Defendant; and

    g.   the loss of Plaintiffs' and Class members' privacy.

## V.    CLASS ACTION ALLEGATIONS

70.    Plaintiffs bring all counts, as set forth below, on behalf of themselves and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure, on behalf of a nationwide Class defined as:

> **All natural persons residing in the United States of America whose PII was compromised in the Data Breach that occurred in February and March 2021 (the "Nationwide Class" or "Class").**

71.    In addition, Plaintiffs bring this action on behalf of themselves and on behalf of a subclass defined as:

> **All current and former employees of Defendant Paxton who are residents of the United States of America and whose PII was accessed in the Data Breach that occurred in February and March 2021 (the "Employee Subclass").**

72.    Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, officers, and directors.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

73.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

74.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).**  The members of the Class are so numerous that joinder of all Class members would be impracticable.  On information and belief, Class members number in the tens of thousands.

75.     **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Such common questions of law or fact include, *inter alia*:

    a.  Whether Defendant failed to use reasonable care and reasonable methods to secure and safeguard Plaintiffs' and Class members' PII;

    b.  Whether Defendant properly implemented its purported security measures to protect Plaintiffs' and Class members' PII from unauthorized capture, dissemination, and misuse;

    c.  Whether Defendant took reasonable measures to determine the extent of the Data Breach after it first learned of same;

    d.  Whether Defendant disclosed Plaintiffs' and Class members' PII in violation of the understanding that the PII was being disclosed in confidence and should be maintained;

    e.  Whether Defendant failed to maintain and execute reasonable procedures designed to prevent unauthorized access to Plaintiffs' and Class members' PII;

    f.  Whether Defendant was negligent in failing to properly secure and protect Plaintiffs' and Class members' PII; and

g.  Whether Plaintiffs and the other members of the Class are entitled to damages, injunctive relief, or other equitable relief, and the measure of such damages and relief.

76.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and other Class members.  Similar or identical common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate in this action.

77.     **Typicality—Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are typical of the claims of the other Class members because, among other things, all Class members were similarly injured through Defendant's uniform misconduct described above and were thus all subject to the Data Breach alleged herein.  Further, there are no defenses available to Defendant that are unique to Plaintiffs.

78.     **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members they seek to represent, they have retained counsel competent and experienced in complex class action litigation, and Plaintiffs will prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

79.     **Injunctive Relief-Federal Rule of Civil Procedure 23(b)(2).**  Defendant has acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate with respect to the Class under Fed. Civ. P. 23(b)(2).

80.     **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.    CAUSES OF ACTION

### COUNT I
### Negligence
**(On Behalf of Plaintiffs and the Nationwide Class)**

81.     Plaintiffs, individually and on behalf of the Class, repeat and re-allege the allegations contained in paragraphs 1 through 80 as though fully set forth herein.

82.     By virtue of its express undertaking to protect Class members' PII and upon accepting and storing Plaintiffs' and Class members' PII, Defendant undertook and owed a duty to Plaintiffs and Class members to exercise reasonable care to secure and safeguard that information and to use reasonable methods to do so. Defendant knew that the PII was confidential and should be protected as private and confidential.

83.     Defendant owed a duty of care not to subject Plaintiffs' and Class members' PII to an unreasonable risk of harm because they were foreseeable and probable victims of any

-20-

inadequate security practices.

84.     Defendant owed numerous duties to its current and former employees, Plaintiffs and Class members, including the following:

> a.  to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting PII;
>
> b.  to protect PII using reasonable and adequate security procedures and systems that are compliant with industry-standard practices; and
>
> c.  to implement processes to quickly detect a data breach and to timely act on warnings about data breaches on its own systems and those of its third parties.

85.     Defendant failed to provide adequate supervision and oversight of the PII with which it was, and is, entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted a malicious third party to gather Plaintiffs' and Class members' PII, misuse the PII and intentionally disclose it to others without consent.

86.     Defendant knew, or should have known, of the risks inherent in collecting and storing PII, the vulnerabilities of its data collection and/or storage systems, and the importance of adequate security.

87.     Defendant knew, or should have known, that its data collection and/or storage systems and networks, including its third-party affiliates, did not adequately safeguard Plaintiffs' and Class members' PII.

88.     Defendant breached its duties to Plaintiffs and Class members by failing to ensure that its agents and affiliates were providing fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class members' PII.

89.     Because Defendant knew that a breach of its systems would damage an untold number of its customers, including Plaintiffs and Class members, Defendant had a duty to adequately safeguard its data systems and the PII contained thereon.

90.     Defendant had a special relationship with Plaintiffs and Class members by virtue of the employment relationship. Plaintiffs' and Class members' willingness to entrust Defendant with their PII was predicated on the understanding and conditional requirement that Defendant would take adequate security precautions. Moreover, only Defendant had the ability to protect its systems and those of its affiliates, and the PII it stored on them, from attack.

91.     Defendant also had independent duties under state and federal laws that required it to reasonably safeguard Plaintiffs' and Class members' PII and promptly notify them about the Data Breach.

92.     Through Defendant's acts and omissions described in this Complaint, including its failure to provide adequate security and its failure to protect Plaintiffs' and Class members' PII from being foreseeably captured, accessed, disseminated, stolen and misused, Defendant unlawfully breached its duty to use reasonable care to adequately protect and secure Plaintiffs' and Class members' PII during the time it was within Defendant's possession or within its control or in the possession of its agent.

93.     The law further imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of the PII to Plaintiffs and the Class members so that they can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their PII. Defendant failed to do so, only disclosing the Data Breach five (5) months after it occurred.

94.     Upon information and belief, Defendant improperly and inadequately

safeguarded Plaintiffs' and Class members' PII in deviation of standard industry rules, regulations, and practices at the time of the unauthorized access.  Defendant's failure to take proper security measures to protect Plaintiffs' and Class members' sensitive PII, as described in this Complaint, created conditions conducive to a foreseeable, intentional criminal act, namely the unauthorized access of the PII.

95.     Upon information and belief, neither Plaintiffs nor the other Class members contributed to the Data Breach and subsequent misuse of their PII as described in this Complaint.

96.     As a direct and proximate cause of Defendant's conduct, Plaintiffs and Class members have suffered and will suffer damages and injury, including but not limited to:

a.   unauthorized use of their PII;

b.   theft of their PII;

c.   monetary costs associated with the detection and prevention of identity theft and unauthorized use of their PII;

d.   damages arising from the inability to use their PII;

e.   time spent and monetary and other costs associated with the loss of productivity or the enjoyment of one's life from taking time to address and attempt to ameliorate, mitigate and deal with the actual and future consequences of the Data Breach, and the stress, nuisance and annoyance of dealing with all issues resulting from the Data Breach (which time spent on those activities Plaintiffs and Class members could have been working and earning a living, therefore suffering further actual injury);

f.   the imminent and impending injury flowing from their PII being placed in the hands of criminals;

g.  damages to and diminution in value of their PII entrusted to Defendant for the sole purpose of purchasing products and services from website operated by Defendant; and

h.  the loss of Plaintiffs' and Class members' privacy.

97.     As a direct and proximate cause of Defendant's negligence, Plaintiffs and Class members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

## COUNT II
### Breach of Implied Contract
### (On Behalf of Plaintiffs and the Employee Subclass)

98.     Plaintiffs, individually and on behalf of the Employee Subclass, repeat and re-allege the allegations contained in paragraphs 1 through 80 as though fully set forth herein.

99.     Defendant required Plaintiffs and the Employee Subclass to provide their personal information, including employees' names, dates of birth, Social Security numbers, driver's license numbers or state ID numbers, financial account and/or routing numbers, health insurance information, taxpayer identification numbers, and credit card numbers and/or expiration dates, as a condition of their employment.

100.    As a condition of their employment with Defendant, Plaintiffs and the Employee Subclass provided their personal and financial information. In so doing, Plaintiffs and the Employee Subclass entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiffs and the Employee Subclass if their data had been breached and compromised or stolen.

101.    Plaintiffs and the Employee Subclass fully performed their obligations under the implied contracts with Defendant.

102.    Defendant breached the implied contracts they made with Plaintiffs and the Employee Subclass by failing to safeguard and protect their personal and financial information, and by failing to provide timely and accurate notice to them that personal and financial information was compromised as a result of the data breach.

103.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiffs and the Employee Subclass have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

## COUNT III
### Invasion of Privacy
### (On Behalf of Plaintiffs and the Employee Subclass)

104.    Plaintiffs, individually and on behalf of the Employee Subclass, repeat and re-allege the allegations contained in paragraphs 1 through 80 as though fully set forth herein.

105.    Plaintiffs and the Employee Subclass had a legitimate expectation of privacy to their PII and were entitled to the protection of this information against disclosure to unauthorized third parties.

106.    Defendant owed a duty to its current and former employees, including Plaintiffs and the Employee Subclass, to keep their PII contained as a part thereof, confidential.

107.    Defendant failed to protect and released to unknown and unauthorized third parties the PII of Plaintiffs and the Employee Subclass.

108.    Defendant allowed unauthorized and unknown third parties access to and examination of the PII of Plaintiffs and the Employee Subclass, by way of Defendant's failure to protect the PII.

109.    The unauthorized release to, custody of, and examination by unauthorized third parties of the PII of Plaintiffs and the Employee Subclass is highly offensive to a reasonable person.

110.    The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiffs and the Employee Subclass disclosed their PII to Defendant as part of the current and former employees' employment with Defendant, but privately with an intention that the PII would be kept confidential and would be protected from unauthorized disclosure. Plaintiffs and the Employee Subclass were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

111.    The Data Breach at the hands of Defendant constitutes an intentional interference with Plaintiffs' and the Employee Subclass's interests in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

112.    Defendant acted with a knowing state of mind when it permitted the Data Breach to occur because it had actual knowledge that its information security practices were inadequate and insufficient.

113.     Because Defendant acted with this knowing state of mind, they had notice and knew the inadequate and insufficient information security practices would cause injury and harm to Plaintiffs and the Employee Subclass.

114.     As a proximate result of the above acts and omissions of Defendant, the PII of Plaintiffs and the Employee Subclass was disclosed to third parties without authorization, causing Plaintiffs and the Employee Subclass to suffer damages.

115.     Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and the Employee Subclass in that the PII maintained by Defendant can be viewed, distributed, and used by unauthorized persons for years to come.  Plaintiffs and the Employee Subclass have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiffs and the Employee Subclass.

**COUNT IV**
**Breach of Confidence**
**(On Behalf of Plaintiffs and the Employee Subclass)**

116.     Plaintiffs, individually and on behalf of the Employee Subclass, repeat and re-allege the allegations contained in paragraphs 1 through 80 as though fully set forth herein.

117.     At all times during Plaintiffs' and the Employee Subclass's interactions with Defendant, Defendant was fully aware of the confidential and sensitive nature of Plaintiffs' and the Employee Subclass's PII that Plaintiffs and the Employee Subclass—employed by Defendant—provided to Defendant.

118.     As alleged herein and above, Defendant's relationship with Plaintiffs and the Employee Subclass was governed by terms and expectations that Plaintiffs' and the Employee

Subclass's PII would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

119.    Plaintiffs and the Employee Subclass employed by Defendant provided Plaintiffs' and the Employee Subclass's PII to Defendant with the explicit and implicit understandings that Defendant would protect and not permit the PII to be disseminated to any unauthorized third parties.

120.    Plaintiffs and the Employee Subclass employed by Defendant also provided Plaintiffs' and the Employee Subclass's PII to Defendant with the explicit and implicit understandings that Defendant would take precautions to protect that PII from unauthorized disclosure.

121.    Defendant voluntarily received in confidence Plaintiffs' and the Employee Subclass's PII with the understanding that PII would not be disclosed or disseminated to the public or any unauthorized third parties.

122.    Due to Defendant's failure to prevent and avoid the Data Breach from occurring, Plaintiffs' and the Employee Subclass's PII was disclosed and misappropriated to unauthorized third parties beyond Plaintiffs' and the Employee Subclass's confidence, and without their express permission.

123.    As a direct and proximate cause of Defendant's actions and/or omissions, Plaintiffs and the Employee Subclass have suffered damages.

124.    But for Defendant's disclosure of Plaintiffs' and the Employee Subclass's PII in violation of the parties' understanding of confidence, their PII would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties.  Defendant's Data Breach was

the direct and legal cause of the theft of Plaintiffs' and the Employee Subclass's PII as well as the resulting damages.

125.     The injury and harm Plaintiffs and the Employee Subclass suffered was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiffs' and the Employee Subclass's PII. Defendant knew or should have known its methods of accepting and securing Plaintiffs' and the Employee Subclass's PII was inadequate as it relates to, at the very least, securing servers and other equipment containing Plaintiffs' and the Employee Subclass's PII.

126.     As a direct and proximate result of Defendant's breach of its confidence with Plaintiffs and the Employee Subclass, Plaintiffs and the Employee Subclass have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of current and former employees; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and the Employee Subclass.

127.    As a direct and proximate result of Defendant's breaches of confidence, Plaintiffs and the Employee Subclass have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

## COUNT V
### Unjust Enrichment
### (On Behalf of Plaintiffs and the Nationwide Class)

128.    Plaintiffs, individually and on behalf of the Class, repeat and re-allege the allegations contained in paragraphs 1 through 80 as though fully set forth herein.

129.    By engaging in the conduct described in this Complaint, Defendant has knowingly obtained benefits from Plaintiffs and the Class, namely their labor and the profits therefrom, and actual monies and other benefits under circumstances such that it would be inequitable and unjust for this Defendant to retain them.

130.    By engaging in the acts and failures to act described in this Complaint, Defendant has been knowingly enriched by the savings in costs that should have been reasonably expended to protect the PII of Plaintiffs and the Class.  Defendant knew or should have known that theft of employee PII could happen, yet it failed to take reasonable steps to pay for the level of security required to have prevented the theft of its current and former employees' PII.

131.    By engaging in the conduct described in this Complaint, Defendant has knowingly obtained benefits from Plaintiffs and the Class under circumstances such that it would be inequitable and unjust for Defendant to retain them.

132.    Defendant will be unjustly enriched if it is permitted to retain the benefits derived from the theft of Plaintiffs' and the Class's PII.

133.     Plaintiffs and each member of the Class are therefore entitled to an award of compensatory damages in an amount to be determined at trial, or the imposition of a constructive trust upon the monies derived by Defendant by means of the above-described actions.

## VII.   DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all claims so triable.

## VIII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully request the Court enter judgment in their and the Class's favor and against Defendant, as follows:

A.     Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as Class Representatives, and appointing Class Counsel as requested in Plaintiffs' expected motion for class certification;

B.     Ordering Defendant to pay actual/statutory damages as appropriate to Plaintiffs and the other members of the Class;

C.     Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiffs and the other members of the Class;

D.     Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs and their counsel;

E.     Ordering Defendant to pay equitable relief, in the form of disgorgement and restitution, and injunctive relief as may be appropriate;

F.     Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

G.     Ordering such other and further relief as may be just and proper.

Date:   September 22, 2021.

Respectfully submitted,

/s/ Jeffery A. Roberts
Jeffery A. Roberts (KBA Bar # 84344)
ROBERTS LAW OFFICE
509 Main Street
Murray, Ky. 42071
Phone: 270-753-0053
Email: jeff@jeffrobertslaw.com

Lori G. Feldman*
GEORGE GESTEN MCDONALD, PLLC
102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520
Phone: (917) 983-9321
Fax: (888) 421-4173
Email: LFeldman@4-Justice.com
E-Service: eService@4-Justice.com

David J. George*
Brittany L. Brown*
GEORGE GESTEN MCDONALD, PLLC
9897 Lake Worth Road, Suite
#302 Lake Worth, FL 33467
Phone: (561) 232-6002
Fax: (888) 421-4173
Email: DGeorge@4-Justice.com
        BBrown@4-Justice.com
E-Service: eService@4-Justice.com

William B. Federman*
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
Email: Wbf@federmanlaw.com

*Attorneys for Plaintiffs*

*Pro hac vice forthcoming*