UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:21-CV-00143-GNS

WILLIAM BOWEN et al.                                                    PLAINTIFFS

v.

PAXTON MEDIA GROUP, LLC                                            DEFENDANT

**MEMORANDUM OPINION AND ORDER**
**GRANTING PRELIMINARY APPROVAL**
**OF CLASS ACTION SETTLEMENT**

This matter is before the Court on Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (DN 72). The motion is ripe for adjudication.

## I.       BACKGROUND

### A.       Factual and Procedural History

This is a class action arising from a third-party criminal data breach of employees' personally identifiable information ("PII") at Defendant Paxton Media Group, LLC ("PMG"). (Am. Compl. ¶ 1, DN 27). Named Plaintiffs William Bowen ("Bowen"), Amy Brasher ("Brasher"), Jesse Rogers ("Rogers"), John Champion ("Champion"), Jesse Gilstrap ("Gilstrap") and Mary Bleier-Troup ("Bleier-Troup") (collectively "Plaintiffs") were employees at PMG at the time of the breach, and the PII allegedly accessed during the breach included Social Security numbers, driver licenses numbers, finance accounts, health insurance information, taxpayer identification numbers, and credit card numbers. (Am. Compl. ¶¶ 4, 5, 13-18). Plaintiffs filed this action on behalf of those employees who had their PII stolen as part of the breach (collectively the "Class") asserting claims against PMG for: (1) negligence; (2) breach of implied contract; (3) invasion of privacy; (4) breach of confidence; (5) unjust enrichment; (6)

declaratory and injunctive relief; (7) violation of the Virginia Consumer Protection Act ("VCPA"); (8) violation of the Kentucky Consumer Protection Act ("KCPA"); and (9) violation of the California Unfair Competition Law.  (Am. Compl. ¶¶ 19, 177-285).

The Court dismissed the claims for declaratory and injunctive relief, and for violations of the VCPA and KCPA, and the parties engaged in discovery.  (Mem. Op. & Order, DN 39).  The parties subsequently reached a proposed class action settlement agreement ("Settlement Agreement") (DN 74-1), and Plaintiffs have moved for preliminary approval of the Settlement Agreement, which is unopposed.  (Pl.'s Unopposed Mot. Prelim. Approval Class Action Settlement, DN 72; Federman Aff. Ex. A, DN 74-1).

**B.      Proposed Settlement Agreement**

        **1.      *Class Membership***

The proposed Settlement Agreement defines the term "Settlement Class" as including:

> [A]ll natural persons residing in the United States whose personally identifiable information was compromised in the Data Security Incident that occurred in February and March 2021 and who received notice from PMG of that Data Security Incident.  All members of the Settlement Class that do not opt out of the settlement shall be referred to as Settlement Class Members.

(Federman Aff. Ex. A (PageID # 550)).  This definition specifically excludes:

> (i) PMG; (ii) the Related Entities; (iii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iv) any judges assigned to this case and their staff and family; and (v) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the criminal activity occurrence of the Data Security Incident or who pleads *nolo contendere* to any such charge.

(Federman Aff. Ex. A (PageID # 550-51)).[1]

---

[1] The proposed Settlement Agreement defines the term "Related Entities" as:

> PMG's past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of PMG's respective predecessors, successors, directors, officers, shareholders, employees, principals, agents, attorneys, insurers, and

2.    *Class Benefits*

For Settlement Class Members who submit a valid claim form, PMG will provide identity theft protection through a third-party vendor for a period of three years.  (Federman Aff. Ex. A (PageID # 555)).  The identify theft protection will include "single bureau credit monitoring, dark web monitoring, $1 million reimbursement insurance, fully managed identity recovery and lost wallet assistance."  (Federman Aff. Ex. A (PageID # 555)).  PMG also agrees to provide security for its employees' private information, and those remedial costs are separate from any amounts paid to Settlement Class Members under the proposed Settlement Agreement.  (Federman Aff. Ex. A (PageID # 555)).

In addition, the proposed Settlement Agreement provides two different methods of filing claims to seek compensation for losses.  (Federman Aff. Ex. A (PageID # 553-55)).  When submitting a "Claim A", Settlement Class Members can request reimbursement for ordinary losses.  (Federman Aff. Ex. A (PageID # 553-54)).  As to this type of claim, the proposed Settlement Agreement provides:

> [PMG] will reimburse documented out-of-pocket expenses incurred as a result of the Data Security Incident, up to a maximum of two thousand and five hundred and no/100 dollars ($2,500.00) per person upon submission of a claim and supporting third-party documentation, such as the following losses:

---

> reinsurers, and includes, without limitation, any Person related to any such entity who is, was, or could have been named as a defendant in the Lawsuit, other than any Person who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, or aiding or abetting the criminal activity associated with the Data Security Incident or who pleads *nolo contendere* to any such charge.

(Federman Aff. Ex. A (PageID # 548-49)).  In addition, the proposed Settlement Agreement uses the term "Released Persons", which refers to "PMG, the Related Entities, and each of their past or present parents, subsidiaries, divisions, and, and each of their respective predecessors, successors, assigns, owners, directors, shareholders, officers, employees, principals, agents, attorneys, insurers, and reinsurers."  (Federman Aff. Ex. A (PageID # 550)).

(i)      Bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel;

(ii)      Fees for credit reports, credit monitoring, or other identity theft insurance product purchased between March 20, 2021, and the close of the Claims Period; and

(iii)      Compensation for up to four hours of lost time, at $22.50/hour, provided that the claimant certifies under penalty of perjury that the lost time was spent in response to the Data Security Incident and provides a written description of the time spent.  The maximum amount any one claimant may recover under Claim A is $2,500.00.

(iv)      This list of reimbursable documented out-of-pocket expenses is not meant to be exhaustive, rather it is exemplary.  Settlement Class Members may make claims for any documented out-of-pocket losses reasonably related to the Data Security Incident or to mitigating the effects of the Data Security Incident. The Claims Administrator shall have discretion to determine whether any claimed loss is reasonably related to the Data Security Incident.

(Federman Aff. Ex. A (PageID # 553-54)).

For submissions of a "Claim B", Settlement Class Members can request reimbursement for extraordinary losses.  (Federman Aff. Ex. A (PageID # 554-55)).  As to this type of claim, the proposed Settlement Agreement provides:

[PMG] will provide up to a maximum of four thousand and two hundred and no/100 dollars ($4,200.00) in compensation for extraordinary losses, including proven actual monetary losses, upon submission of a valid Claim Form provided that:

(i)      The loss is an actual, unreimbursed monetary loss arising from identity theft, fraud, or similar misuse, supported by third-party documentation;

(ii)      The loss from identity theft, fraud, or misuse was more likely than not caused by the Data Security Incident;

(iii)      The actual identity theft, misuse, or fraud loss is not already covered by one or more of the ordinary loss compensation categories under Claim A;

(iv)      The claimant made reasonable efforts to avoid the loss or seek reimbursement for the loss, including, but not limited to, exhaustion of all available credit monitoring insurance and identity theft insurance; and

(v)      The actual misuse or fraud loss occurred between March 20, 2021, and the close of the Claims Period.  The maximum amount any one claimant may recover under Claim B is $4,200.00.

(Federman Aff. Ex. A (PageID # 554-55)).

The maximum aggregate amount to be paid for all types of claims is not to exceed $1 million.  (Federman Aff. Ex. A (PageID # 555)).  If the aggregate amount of the claims exceeds $1 million, the amount paid on those claims will be reduced on a pro rata basis.  (Federman Aff. Ex. A (PageID # 555)).

### 3.   *Waiver*

Section 13 of the proposed Settlement Agreement contains a broad release of claims by Settlement Class Members.  (Settlement Agreement (PageID # 572-75)).  In relevant part, it provides:

> Plaintiffs and each Settlement Class Member, and each of their respective spouses and children with claims on behalf of the Settlement Class Member, executors, representatives, guardians, wards, heirs, estates, successors, predecessors, next friends, coborrowers, co-obligors, co-debtors, legal representatives, attorneys, agents, and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf (including the government in the capacity as parens patriae or on behalf of creditors or estates of the releasors), and each of them (collectively and individually, the "Releasing Persons"), and (ii) Settlement Class Counsel and each of their past and present law firms, partners, or other employers, employees, agents, representatives, successors, or assigns will be deemed to have, and by operation of the Final Order and Judgment shall have, fully, finally, completely, and forever released and discharged the Released Persons from the Released Claims.  The release set forth in the preceding sentence (the "Release") shall be included as part of any judgment, so that all Released Claims shall be barred by principles of res judicata, collateral estoppel, and claim and issue preclusion.

(Settlement Agreement (PageID # 574)).

## II.    JURISDICTION

Diversity jurisdiction exists for this class action suit pursuant to 28 U.S.C. § 1332(d)(2).

## III.    DISCUSSION

In ruling on Plaintiffs' unopposed motion, the Court must determine whether to preliminarily certify the class under Fed. R. Civ. P. 23(a) and 23(b), and approve the class representatives and class counsel.  The Court must also determine whether proposed Settlement

Agreement is fair, adequate, and reasonable.  *See Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 625 (6th Cir. 2007).

### A.    Class Certification

"While the district court has broad discretion in certifying class actions, it must exercise that discretion within the framework of Rule 23."  *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002) (citing *Cross v. Nat'l Tr. Life Ins. Co.*, 553 F.2d 1026, 1029 (6th Cir. 1977)).  As the moving party, Plaintiffs bear the burden of proof to establish that certification is proper.  *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (6th Cir. 1996) (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 522 (6th Cir. 1976)).  Fed. R. Civ. P. 23(a) dictates requirements of numerosity, commonality, typicality, and adequacy for all class action lawsuits, and a court must conduct "a rigorous analysis[] that the prerequisites of Rule 23(a) have been satisfied."  Fed. R. Civ. P. 23(a); *Falcon*, 457 U.S. at 161.  If all of these requirements are not satisfied, certification must be denied.  *See Ball v. Union Carbide Corp.*, 385 F.3d 713, 727 (6th Cir. 2004) (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc)).

The same requirements apply in the context of a settlement, and a court should apply the Fed. R. Civ. P. 23 analysis separate from a fairness analysis.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-22 (1997).  Thus, in addition to Fed. R. Civ. P. 23(a), the moving party "must demonstrate that the class fits under one of the three subdivisions of Rule 23(b)."  Fed. R. Civ. P 23(b); *Coleman*, 296 F.3d at 446.

Because the merits of the underlying claims are not considered in determining whether to certify a class, a court instead assumes that the complaint's substantive allegations are true and that the pleading states cognizable claims.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178

(1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."  (citation omitted)); *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 241 (E.D. Mich. 1997) ("A Rule 23 determination is wholly procedural and has nothing to do with whether a plaintiff will ultimately prevail on the substantive merits of its claims."  (citation omitted)).  "Nonetheless, the Court must undertake an analysis of the issues and the nature of required proof at trial to determine whether the matters in dispute and the nature of plaintiffs' proofs are principally individual in nature or are susceptible of common proof equally applicable to all class members."  *Little Caesar Enters.*, 172 F.R.D. at 241.  "[W]hen a court is in doubt as to whether to certify a class action, it should err in favor of allowing a class."  *Id*. at 241-42 (citations omitted).

### 1. *Rule 23(a) Requirements*

#### a. **Numerosity**

The first requirement for class certification is that "the class is so numerous that joinder of all members is impracticable . . . ."  Fed. R. Civ. P. 23(a)(1).  As the Sixth Circuit has explained:

> There is no automatic cut-off point at which the number of plaintiffs makes joinder impractical, thereby making a class-action suit the only viable alternative. However, sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1).

*Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (internal citation omitted) (citation omitted); *see also In re Am. Med Sys.*, 75 F.3d at 1079 ("There is no strict numerical test for determining impracticability of joinder."  (citation omitted)).

In this instance, the proposed class is defined as "all natural persons residing in the United States whose personally identifiable information was compromised in the Data Security

Incident that occurred in February and March 2021 and who received notice from PMG of that Data Security Incident." (Settlement Agreement § 1.34). As Plaintiffs note, "there are likely more than 20,000 Settlement Class Members in the proposed settlement class . . . ." (Pls.' Mem. Supp. Unopposed Mot. Prelim. Approval of Class Action Settlement 7, DN 73). Thus, based on the size of the class, Plaintiffs have satisfied the numerosity requirement of Fed. R. Civ. P. 23(a)(1).

### b.   Commonality

The second requirement is that "there are questions of law or fact common to the class . . . ." Fed. R. Civ. P. 23(a)(2). "Although Rule 23(a)(2) speaks of 'questions' in the plural, . . . there need only be one question common to the class." *Sprague*, 133 F.3d at 397 (citing *In re Am. Med Sys.*, 75 F.3d at 1080). "It is not every common question that will suffice, however; at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. What [courts] are looking for is a common issue the resolution of which will advance the litigation." *Id.*

The Settlement Class Members' injuries here all arise from PMG's failure to maintain adequate data security and to secure its employees' PII. (Pls.' Mem. Supp. Unopposed Mot. Prelim. Approval of Class Action Settlement 8). As a result, the common issue at trial would be the sufficiency of PMG's data security practices and its failure to secure its employees' PII. Therefore, the commonality requirement in Fed. R. Civ. P. 23(a)(2) is satisfied.

### c.   Typicality

Third, a court must consider whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ." Fed. R. Civ. P. 23(a)(3). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and

the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague*, 133 F.3d at 399 (quoting *In re Am. Med. Sys.*, 75 F.3d at 1082). "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys.*, 75 F.3d at 1082). "[A] representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." *Senter*, 532 F.2d at 525 n.31 (citation omitted). "On the other hand, . . . the typicality requirement is not satisfied when a plaintiff can prove his own claim but not 'necessarily have proved anybody's else's claim.'" *Beattie*, 511 F.3d at 561 (quoting *Sprague*, 133 F.3d at 399).

The claims alleged by Plaintiffs are typical of the Class in that the claims all arise of the data breach and involve allegations that PMG failed to adequately protect its employees' PII. The class members will have suffered nearly identical injuries with the only notable difference being the type and amount of the damages requested. The Court finds that the typicality requirement of Fed. R. Civ. P. 23(a)(3) is also satisfied.

### d.    Adequacy of Representation

The fourth consideration is whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "There are two criteria for determining whether the representation of the class will be adequate: 1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter*, 532 F.2d at 524, 525 (citing *Gonzales v. Cassidy*, 474 F.2d 67, 73 (5th Cir. 1973)).

### i.    Class Representatives

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.  '[A] class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members.'"  *Amchem Prods.*, 521 U.S. at 625-26 (alteration in original) (internal citation omitted) (citation omitted).

As part of the proposed Settlement Agreement, Bowen, Brasher, Rogers, Champion, and Gilstrap, and Bleir-Troup have been designated to serve as class representatives.  (Settlement Agreement (PageID # 551)).  The injuries alleged by the class representatives are substantially the same as their injuries arising from same data breach and PMG's failure to adequate protect its employees' PII.  The alleged injuries include:

> (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; and (iv) the continued and certainly increased risk to their PII, which may remain backed up in [PMG's] possession and is subject to further unauthorized disclosures so long as [PMG] fails to undertake appropriate and adequate measures to protect the PII.

(Am. Compl. ¶ 20).

For these reasons, Bowen, Brasher, Rogers, Champion, and Gilstrap, and Bleir-Troup share common interests with the members of the proposed class, and they can be appointed as class representatives.

### ii    Class Counsel

The other requirement under Fed. R. 23(a)(4) dictates that a court consider the adequacy of the representative plaintiffs' representation "to determine whether class counsel are qualified, experienced and generally able to conduct the litigation . . . ."  *Stout v. J.D. Byrider*, 228 F.3d

709, 717 (6th Cir. 2000) (citation omitted).  A plaintiff's choice of counsel "should negatively impact [a court's] determination of adequacy at this early stage only if the proposed lead counsel is 'so deficient as to demonstrate that it will not fairly and adequately represent the interests of the class.'"  *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 511-12 (E.D. Pa. 2004) (citation omitted).

Plaintiffs have designated Attorney William B. Federman ("Federman") of the law firm of Federman & Sherwood and Attorney Lori G. Feldman ("Feldman") of the law firm of George Feldman McDonald, PLLC to serve as class counsel for purposes of settlement.  (Pls.' Mem. Supp. Unopposed Mot. Prelim. Approval of Class Action Settlement 16; Settlement Agreement (PageID # 551)).  These attorneys and their firms have significant experience with class-action litigation and therefore appear qualified to represent adequately the interests of the proposed class.  (Federman Aff. ¶ 19, DN 74; Federman Aff. Ex. 2, at 2-7, DN 74-2; Federman Aff. Ex. 3, at 2-13, DN 74-3).  Accordingly, Plaintiffs' counsel satisfies the requirements of Fed. R. Civ. P. 23(a)(4).

### 2.    *Rule 23(b) Requirement*

Besides Fed. R. Civ. P. 23(a), "[the] parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)."  *Amchem Prods.*, 521 U.S. at 614.  In their motion Plaintiffs seek preliminary approval pursuant to Fed. R. Civ. P. 23(b)(3).

Under this provision, a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The predominance requirement of Fed. R. Civ. P. 23(b)(3) is like Fed. R. Civ. P 23(a)(2)'s commonality

requirement "in that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1084 (citation omitted). The central question is whether the questions common to the class "[are] at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). "The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001) (quoting *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 517 (S.D.N.Y. 1996)). "Common questions need only predominate: they need not be dispositive of the litigation." *Id.* (internal quotation marks omitted) (quoting *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)).

In this instance, a class action is superior to adjudicating the controversy. Common questions of fact and law predominate over any potential individual issues by class members. Class members' claims all relate to whether PMG failed to adequately protect its employees' PII, in violation of state law. The proof that each class member would need to prove his or her claims would be similar in kind to the nature of the proof that all other members of the class would rely upon in pursuing claims against PMG.

A class action lawsuit is also a superior method of fairly and efficiently adjudicating this case. The amount of damages incurred by each class member would likely not justify pursuing individual lawsuits against PMG or the other parties to be released under the proposed Settlement Agreement. *See Pfaff v. Whole Foods Mkt. Grp. Inc.*, No. 1:09-CV-02954, 2010 WL 3834240, at *7 (N.D. Ohio Sept. 29, 2010) ("The 'most compelling rationale for finding superiority in a class action' is the existence of a 'negative value suit.' A negative value suit is

one in which the costs of enforcement in an individual action would exceed the expected individual recovery." (quoting *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 351 (N.D. Ohio 2001)).

In sum, the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) support the certification of the proposed class as defined in the proposed Settlement Agreement. Plaintiffs' motion is granted, and the Settlement Class as defined in the Settlement Agreement is preliminarily certified for the purposes of settlement.

**B.** **Appointment of Class Counsel**

Fed. R. Civ. P. 23 also provides that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g). In making that appointment, a court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class . . . ."

Fed. R. Civ. P. 23(g)(1)(A).

As noted above, the proposed class counsel is Federman and Feldman. This matter was filed in 2021, and the parties have conducted informal discovery. (Federman Aff. ¶ 4). As a result of the mediation and ongoing discussions between counsel during 2023, the parties have entered into the proposed Settlement Agreement. (Federman Aff. ¶¶ 4). Federman and Feldman and their law firms have significant experience in class actions and data breach cases of similar size, scope, and complexity. (Federman Aff. ¶ 19; Federman Aff. Ex. 2, at 2-7; Federman Aff. Ex. 3, at 2-13). As reflected by their representation in this case, Federman and Feldman have shown their willingness to devote substantial time and resources to representing the claims of the class members. Accordingly, these attorneys satisfy the requirements of Fed. R. Civ. P. 23(g),

and Attorney William B. Federman of the law firm of Federman & Sherwood and Attorney Lori G. Feldman of the law firm of George Feldman McDonald, PLLC are designated as counsel for the certified settlement class.

### C.    Preliminary Approval of Proposed Settlement Agreement

Having been presented with the proposed Settlement Agreement, the Court must determine whether to grant preliminary approval pursuant to Fed. R. Civ. P. 23(e).  The approval process involves two stages:  (i) "[t]he judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing"; and (2) "[i]f so, the final decision on approval is made after the hearing."  Federal Judicial Center, *Manual for Complex Litigation* § 13.14 (4th ed. 2004); *see also Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 270 (E.D. Ky. 2009).  "At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval."  *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-CV-00489, 2015 WL 1976398, at *1 (W.D. Ky. May 4, 2015) (quoting Federal Judicial Center, *supra*, § 21.662). Courts apply a degree of scrutiny to proposed settlement agreements sufficient to avoid "rubber-stamp[ing]" a proposed settlement agreement, while still being "mindful of the substantial judicial processes that remain to test the assumptions and representations upon which the parties' motion[] [is] premised." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 338.

To approve the proposed Settlement Agreement reached by the parties, the Court must determinate whether its is "fair, reasonable, and adequate." *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016); Fed. R. Civ. P. 23(e)(2).  Fed. R. Civ. P. 23(e)(2) outlines the factors courts are to consider in making that determination.  As the advisory committee notes explain, the addition of these factors was not intended "to displace any factor, but rather to focus

the court and the lawyers on the core concerns of procedure and substance that should guide the

decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to

2018 amendments.  Therefore, this Court must analyze both the Fed. R. Civ. P. 23(e) factors and

the factors articulated by the Sixth Circuit.  *See Peck v. Air Evac EMS, Inc.*, No. 5:18-615-DCR,

2019 WL 3219150, at *5 (E.D. Ky. July 17, 2019).

### 1.    *Fed. R. Civ. P. 23(e)(2)*

In relevant part, Fed. R. Civ. P. 23(e) provides:

> If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
> (A)    the class representatives and class counsel have adequately represented the class;
> (B)    the proposal was negotiated at arm's length;
> (C)    the relief provided for the class is adequate, taking into account:
>> (i)    the costs, risks, and delay of trial and appeal;
>> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv)    any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

As to the first consideration, the class representatives and class counsel have adequately

represented the class through arm's-length negotiations to reach the settlement reflected in the

proposed Settlement Agreement.  Class counsel is experienced in class action cases, and they had

adequate information to evaluate the strength of the claims asserted in the Complaint and to

negotiate on behalf the class.  (Federman Aff. ¶¶ 4, 17; Federman Aff. Ex. 2, at 2-7; Federman

Ex. 3, at 2-3); *see* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment (noting

that in considering the adequacy of representation, "the nature and amount of discovery in this or

other cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on

15

behalf of the class had an adequate information base.  The pendency of other litigation about the same general subject on behalf of class members may also be pertinent.").  The proposed Settlement Agreement provides compensation for all classes members submitting claims for ordinary losses up to $2,500, and to the extent that any class members suffered extraordinary losses, the proposed Settlement Agreement provides for the submission of claims for reimbursement of such losses up to $4,200.  In addition, PMG agrees to provide three years of credit monitoring upon submission of a valid claim form.  Overall, the proposed Settlement Agreement favors the class and supports a finding that the class was adequately represented.

In addition, the record reflects that the proposed Settlement Agreement was negotiated at arm's length over a period of time by the parties.  The parties engaged in informal discovery to become informed about the strengths and weaknesses of the case.  (Federman Aff. ¶ 4).  In January 2023, the parties participated in a mediation with a private mediator.  (Federman Aff. ¶ 4).  While that effort was unsuccessful, it eventually led to the Settlement Agreement presented to the Court for approval on December 14, 2023.  (Federman Aff. ¶ 4).  These facts reflect that the proposed Settlement Agreement is the product of an arm's-length transaction.  *See Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010) ("[T]he parties engaged in extensive, arms-length negotiations for over four months, which [] allowed the parties to fully explore their respective factual and legal positions.").

The third factor is whether the proposed settlement is adequate, taking into various factors in Fed. R. Civ. P. 23(e)(2)(C).  As proposed, the Settlement Agreement does appear to be adequate because its terms provide compensation for class members impacted by the data breach for their loss.  Class members who submit valid claims and are entitled to compensation up to the maximum for each type of loss subject to the aggregate maximum of $1 million.  (Settlement

Agreement (PageID # 552-55)).  The proposed Settlement Agreement notes that the settlement terms for the class members were negotiated before the parties broached the topic of attorneys' fees, costs, or expenses, or the class representatives' service awards.  (Settlement Agreement (PageID # 543)).  It also provides that any award of attorneys' fees and costs would not exceed $350,000, would be paid separate and apart from the payment of claims, and would not be subject to the maximum claims cap.  (Settlement Agreement (PageID # 555-56)).  The proposed Settlement Agreement expressly disclaims any side agreement between the parties, stating:

> This Settlement Agreement constitutes the entire agreement between the Parties with respect to the settlement of the Lawsuit.  This Settlement Agreement supersedes all prior negotiations and agreements with respect to the settlement of the Lawsuit and may not be modified or amended, except by a writing signed by or on behalf of the Parties or their respective successors-in-interest.  The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or understanding concerning any part of the subject matter of this Settlement Agreement has been made or relied on, except as expressly set forth in this Settlement Agreement.

(Settlement Agreement (PageID # 577)).

The last factor to consider under Rule 23(e) is whether the proposed Settlement Agreement would "treat[] the class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  While the class members may receive different amounts, such amounts will be based on the ordinary and extraordinary losses incurred by class members up to the individual caps established in the proposed Settlement Agreement.  Thus, the Court finds that the class members are to be treated equitably relative to each other.  *See In re Skechers Toning Shoe Prods. Liab. Litig.*, No. 3:11-MD-2308-TBR, 2012 WL 3312668, at *9 (W.D. Ky. Aug. 13, 2012).

When considered, all of the Fed. R. Civ. P. 23(e)(2) factors weigh in favor of granting preliminary approval to the Settlement Agreement.

## 2. *Sixth Circuit Factors*

In addition to Fed. R. Civ. P. 23(e)(2), the Sixth Circuit has instructed trial courts to consider certain factors in determining whether a settlement is "fair, reasonable, and adequate." *See Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am.*, 497 F.3d at 631. These factors are:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Id*. (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)).

As to the first factor, "[c]ourts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Thacker*, 695 F. Supp. 2d at 531 (quoting *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008)). "When a 'settlement is the result of extensive negotiations by experienced counsel, the Court should presume it fair.'" *In re Skechers Toning Shoe Prod. Liab. Litig.*, 2012 WL 3312668, at *9 (quoting *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 351). As discussed above, the parties engaged in informal discovery, and the terms of the Settlement Agreement followed an unsuccessful mediation in January 2023 and continuing negotiations between counsel. There is nothing in the record indicating any fraud or collusion between the parties.

The second factor also weighs in favor of granting preliminary approval to the Settlement Agreement. Continuing this litigation would result in a greater expense and longer duration of this litigation than settling this class action suit at this stage. The proposed Settlement Agreement expressly acknowledges that Plaintiffs have considered the uncertainty of proving

liability and the risk of further litigation in reaching an agreement to settle their claims. (Settlement Agreement (PageID # 543)).   Thus, this factor supports granting preliminary approval of the parties' agreement.

For the third factor, the Court must consider the sufficiency of the discovery by the parties.  As this Court has noted, "[i]f the parties have engaged in discovery, then a settlement is more likely to be fair and reasonable under the circumstances."  *Green v. Platinum Rests. Mid-Am. LLC*, No. 3:14-CV-439, 2022 WL 1240432, at *5 (W.D. Ky. Apr. 27, 2022) (citation omitted); *see also Does 1-2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 898-99 (6th Cir. 2019) (concluding that the district court did not abuse its discretion when finding that informal discovery was sufficient for approval).  The parties here have engaged in informal discovery, which weighs in favor of approving the proposed Settlement Agreement.

In addition, the likelihood of success must be considered.  As the Sixth Circuit has noted, this is the most important factor, and "[t]he likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured."  *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011) (internal quotation marks omitted) (citation omitted).   In this instance, PMG's decision to enter into the proposed Settlement Agreement and to provide the sum of $1 million to settle the class members' claims indicates that PMG weighed the costs and risks of trying this matter, and PMG apparently believed that Plaintiffs could succeed on the merits of their claims.  Preliminary approval at this time (and assuming final approval of the settlement is later granted) would provide for a shorter duration of this lawsuit than continued prolonged litigation.

"In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted

litigation are entitled to great deference." *In re Skechers Toning Shoe Prods. Liab. Litig.*, No. 3:11-MD-2308-TBR, 2013 WL 2010702, at *6 (W.D. Ky. May 13, 2013) (quoting *Thacker*, 695 F. Supp. 2d at 532).  Here, Plaintiffs and their attorneys support the preliminary approval of the proposed Settlement Agreement following discovery and continued negotiations with PMG. (Settlement Agreement (PageID # 543)).  Thus, this factor supports approval.

For the sixth factor, the Sixth Circuit has directed courts to consider the reaction of absent class members.  Because the present motion relates to preliminary, pre-notice stage, the absent class members have not yet had an opportunity to voice any concerns.  This factor is neutral at this juncture.

Finally, the Court must consider the public interest in granting preliminary approval of the Settlement Agreement.  "[T]here is a strong public interest in encouraging settlement of . . . class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."  *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 525 (E.D. Mich. 2003) (quoting *Granada Inv.*, 962 F.2d at 1205).  Thus, this final factor supports preliminary approval.

Overall, these factors weigh in favor of preliminary approving the proposed Settlement Agreement.  Accordingly, the proposed Settlement Agreement represents a fair and reasonable settlement to a bona fide dispute and is preliminarily approved.

**D.**   **Proposed Notice Materials**

As a result of the Court's preliminary approval, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal . . . ."  Fed. R. Civ. P. 23(e).  This notice "must clearly and concisely state in plain, easily understood language" the following:

(i)      the nature of the action;

(ii)     the definition of the class certified;

(iii)    the class claims, issues, or defenses;

(iv)     that a class member may enter an appearance through an attorney if the member so desires;

(v)      that the court will exclude from the class any member who requests exclusion;

(vi)     the time and manner for requesting exclusion; and

(vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).   "The notice provided to class members must include enough information to allow the class members to make an informed choice of whether to approve or disapprove the settlement."   *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 160 (S.D. Ohio 1992) (citing *Weinberger v. Kendrick*, 698 F.2d 61, 71 (2d Cir. 1982)).

In relevant part, the proposed notice states:

A Settlement has been reached in a class action lawsuit against Paxton Media Group, LLC ("PMG").   The lawsuit alleges that on March 20, 2021, Paxton Media Group, LLC ("PMG") identified suspicious activity on certain computer systems in its environment.   It was ultimately determined that PMG was the target of a cyber-attack and that an unauthorized actor was able to copy certain information from its systems, including data containing the personally identifiable information ("PII") for certain current and former employees (the "Data Security Incident").   PMG maintains that it had meritorious defenses, and it was prepared to vigorously defend the lawsuit.   The settlement is not an admission of wrongdoing or an indication that PMG has violated any laws, but rather the resolution of disputed claims.

(Settlement Agreement (PageID # 594); *see also* Settlement Agreement (PageID #597)).   This notice also explains who is included in the Settlement Class and provides contact information for the claims administrator for any person seeking clarification as to whether he or she is included in the Settlement Class.   (Settlement Agreement (PageID # 597-98)).   Besides notifying the Settlement Class of their eligibility for three years of free credit monitoring services upon submission of a valid claim form, the notice outlines the types of claims available for class members and requirement that Settlement Class Members submit claim forms for any loss, as

well as the consequences for failing to file a claim.  (Settlement Agreement (PageID # 598-99, 604)).  The notice explains what rights the member of the Settlement Class is giving up by participating in the settlement and the process for opting out of the Settlement Class by the exclusion deadline.  (Settlement Agreement (PageID # 599-600)).  It also notes that the Court may approve service awards of up to $1,500 for each class representative and will consider the request for attorneys' fees, costs, and expenses from Plaintiffs' counsel at the final fairness hearing.  (Settlement Agreement (PageID # 600-01)).  As drafted, the notice addresses how a Settlement Class Member can object to the proposed settlement at the final fairness hearing, including the ability to retain counsel and his or her own expenses, and the procedure to be used for raising objections at that hearing.  (Settlement Agreement (PageID # 600-03)).  Finally, the notice explains the purpose of and the process for the final fairness hearing, and what the Court will consider in determining whether to approve the final settlement.  (Settlement Agreement (PageID # 603)).

The Court finds that the notice conforms with the requirements of Fed. R. Civ. P. 23(c) and is therefore approved.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion") (DN 72) is **GRANTED**.

**IT IS FURTHER ORDERED** that:

1.    The Settlement Class preliminarily satisfies the certification requirements of Fed. R. Civ. P. 23(a) and 23(b)(3); and Plaintiffs, the Settlement Class Representatives, and Paxton Media Group, LLC ("PMG") conditionally consent to the conditional certification of the

Settlement Class, solely for the purpose of settlement of the claims raised by Plaintiffs in this case (the "Class Action");

2.       For purposes of the settlement of this Class Action, this Court has jurisdiction to enter orders in the Class Action that are applicable to the Settlement Class and PMG in the Western District of Kentucky as detailed in the Motion;

3.       For purposes of settling the Class Action, Settlement Class Counsel is sufficiently qualified, has extensive experience handling class actions and has been appointed class counsel in multiple representative class actions;

4.       For purposes of settling the Class Action, the Settlement Class Representatives do not have interests antagonistic to those of the Settlement Class;

5.       For purposes of settling the Class Action, the Settlement Class consists of more than 20,000 members which figure is so numerous that joinder of all members is impracticable;

6.       For purposes of settling the Class Action, there are questions of law and/or fact common to all members of the Settlement Class, including in terms of the legal theory advanced and the factual circumstances underlying that theory;

7.       For purposes of settling the Class Action, the claims of the Settlement Class Representatives are typical of the claims of the Settlement Class;

8.       For purposes of settling the Class Action, the Settlement Class Representatives' interests and incentives are sufficiently aligned with those of the Settlement Class;

9.       For purposes of settling the Class Action, Settlement Class Counsel and the Settlement Class Representatives have fairly and adequately protected the interests of the Settlement Class;

10.     For purposes of settling the Class Action, Angeion Group is an appropriate Claims Administrator;

11.     For purposes of settling the Class Action, questions of law or fact common to the members of the Settlement Class predominate over any questions affecting only the individual class members;

12.     For purposes of settling the Class Action, settlement through a class action under Fed. R. Civ. P. 23(b)(3) is superior to other available methods of resolving the claims alleged in the Class Action and the other claims released in the Settlement Agreement;

13.     For purposes of settling the Class Action, the proposed Class Representatives and Class Counsel adequately represent the interests of the Settlement Class;

14.     The Notice Program as set forth in the Settlement Agreement, including the settlement Notice substantially in the form attached hereto as Exhibit A, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the terms of the Settlement Agreement, the conditional certification of the Settlement Class for settlement purposes only, how to object and opt out of the Settlement, and the date, time, and location of the Final Fairness Hearing, and no other or further notice is required;

15.     The Settlement Agreement and its terms were negotiated by the Parties in good faith and at arm's-length;

16.     For purposes of settling the Class Action, there was sufficient discovery and investigation conducted by the Parties prior to entering into the Settlement Agreement;

17.     The Settlement Agreement is fair and reasonable based on the range of possible outcomes and the cost, delay and uncertainty associated with further litigation;

18.     The Settlement Agreement should be preliminarily approved;

19.     The Claims Administrator, Angeion Group, should be preliminarily approved;

20.     A Final Fairness Hearing on the final approval of the Settlement Agreement shall be held so that the Settlement Class Members will have sufficient time from the mailing of the Notice to secure further information regarding the relief sought by the Motion or object to the proposed Settlement Agreement should they choose to do so, and engage separate counsel to appear at the Final Fairness Hearing;

21.     Other good and sufficient cause exists for granting the relief requested in the Motion;

22.     The Parties' decision to enter into the Settlement Agreement is consistent with their fiduciary duties and does not give rise to any claim or remedy against Plaintiffs, the Settlement Class Representatives, or any of their advisors or professionals except as may be expressly set forth in this Memorandum Opinion and Order or the Settlement Agreement; and it is therefore:

**ORDERED ADJUDGED AND DECREED THAT:**

a.     Those portions of the Motion seeking preliminary approval of the Settlement Agreement, conditional certification of the Settlement Class solely for settlement purposes, appointment of Settlement Class Counsel and Settlement Class Representatives for settlement purposes, approval of the Notice and Notice Program, and scheduling of a Final Fairness Hearing are **GRANTED**.

b.     The Settlement Agreement is preliminarily approved in its entirety as fair, adequate, and reasonable.

c.     The Settlement Class is conditionally certified, solely for purposes of settlement of the Class Action, pursuant to Fed. R. Civ. P. 23(a) and (b)(3), and shall consist of:

> All natural persons residing in the United States whose personal identifiable information was compromised in the Data Security Incident that occurred in February and March 2021 and who received notice from Paxton Media Group, LLC of that Data Security Incident.

d.      For settlement purposes only, PMG waives any judicial estoppel defense it may be able to assert against Plaintiffs or any member of the Settlement Class with respect to their receipt of settlement funds.

e.      For settlement purposes only, Plaintiffs William Bowen, Amy Brasher, Jesse Rogers, John Champion, Jesse Gilstrap, and Mary Bleier-Troup are hereby conditionally appointed as Settlement Class Representatives.  If a Settlement Class Representatives' Service Award is awarded by this Court, it shall be paid at the same time Settlement Class Counsel's attorneys' fees and costs are paid.

f.      For settlement purposes only, Lori G. Feldman of George Feldman McDonald, PLLC and William B. Federman of Federman & Sherwood and are hereby appointed Settlement Class Counsel.

g.      The Notice Program as set forth in the Settlement Agreement, including the proposed form of settlement Notice, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the terms of the Settlement Agreement, the conditional certification of the Settlement Class for settlement purposes only, how to object and opt out of the Settlement including the opt out and objection deadlines, and the Final Fairness Hearing, and are hereby approved.

h.      By **April 8, 2024**, PMG shall provide the Claims Administrator with the names and electronic and/or U.S. mailing addresses of the Settlement Class Members whose electronic and U.S. mailing addresses are known to PMG.  The Claims Administrator shall, by using the

National Change of Address ("NOCA") database maintained by the United States Postal Service ("Postal Service"), obtain any updates, if any, to the mailing addresses.

       i.      By **May 3, 2024**, (the "Notice Deadline"), the Claims Administrator shall send the settlement Notice in substantially the form attached hereto as Exhibit A to all Settlement Class Members whose electronic mailing addresses are known to PMG by electronic mail.  If Class Members do not have an email address, then the Notice in Exhibit A will be sent to the Settlement Class Members whose addresses are known to PMG by first-class U.S. mail.

       j.      If any Notice is returned by the Postal Service as undeliverable, the Claims Administrator shall remail the Notice to the forwarding address, if any, provided by the Postal Service on the face of the returned mail.  Where the undeliverable Notice is returned without a forwarding address, the Claims Administrator shall make reasonable efforts to ascertain the correct address of the Settlement Class Member whose Notice was returned undeliverable and remail the Notice. Other than as set forth in the preceding sentence, neither the Parties nor the Claims Administrator shall have any obligation to remail a Notice to a Settlement Class Member.

       k.      An emailed or mailed reminder will be distributed fourteen (14) days prior to the end of the claims period if the claim rate at that time is under 2%.

       l.      No later than thirty (30) days following entry of the Memorandum Opinion and Order and engagement of a Claims Administrator, and prior to the mailing of the Notice to Settlement Class Members, PMG will publish notice of the settlement in newspapers owned as of the date of the Data Security Incident.  PMG will further post the notice on applicable newspaper/television websites for a period of sixty (60) days.  Any content proposed to be included or displayed on PMG's published notices shall be approved in advance by Settlement Class Counsel and PMG's Counsel, which approval shall not be unreasonably withheld.

m.      Any Settlement Class Member may opt out of the proposed settlement (the "Opt Out Request") by sending a written statement that the class member desires to be excluded from the proposed settlement to the address for the Claims Administrator provided in the Notice postmarked no later than sixty (60) days after the Notice Deadline.  For a Settlement Class Member's Opt-Out Request to be valid, it must (a) state his or her full name, address, and telephone number; (b) contain the Settlement Class Member's personal and original signature (or the original signature of a person previously authorized by law, such as a trustee, guardian, or person acting under a power of attorney to act on behalf of the Settlement Class Member with respect to a claim or right, such as those in the Lawsuit); and (c) clearly manifest the Settlement Class Member's intent to be excluded from the Settlement Class, to be excluded from the Settlement, to not participate in the Settlement, and/or to waive all rights to the benefits of the Settlement.  The Claims Administrator shall promptly inform Settlement Class Counsel and PMG's Counsel of any Opt-Out Requests.

n.      Any class member who submits a written Opt Out Request as described above shall be excluded from the proposed settlement and shall have no rights, claims, or obligations under the proposed settlement.

o.      Settlement Class Counsel shall file a motion for final approval of the Settlement no later than fourteen (14) days before the Final Approval Hearing.

p.      Settlement Class Counsel shall file their application for attorneys' fees and costs no later than fourteen (14) days prior to the deadline for objections to the proposed settlement.

q.      Any party that seeks to object to any of the relief requested in the Motion pertaining to the fairness or final approval of the Settlement shall file a formal objection.  Any class member objecting to any aspect of the Settlement Agreement, the Order and Final

Judgment to be entered herein, and/or the application for attorneys' fees, costs, and expenses, may appear in person or by his or her attorney at the Final Fairness Hearing and present any evidence or argument that may be proper and relevant, PROVIDED, HOWEVER, THAT NO PERSON OTHER THAN THE NAMED PLAINTIFFS AND PMG AND THEIR COUNSEL IN THE ACTION SHALL BE HEARD, AND NO PAPERS, BRIEFS, PLEADINGS, OR OTHER DOCUMENTS SUBMITTED BY ANY SUCH PERSON SHALL BE RECEIVED OR CONSIDERED BY THE COURT (UNLESS THE COURT IN ITS DISCRETION SHALL THEREAFTER OTHERWISE DIRECT, UPON APPLICATION OF SUCH PERSON AND FOR GOOD CAUSE SHOWN), UNLESS NO LATER THAN TEN DAYS PRIOR TO THE FINAL FAIRNESS HEARING, SUCH PERSON HAS SERVED AND FILED WITH THE COURT A DOCUMENT CONTAINING THE FOLLOWING INFORMATION IN THE FOLLOWING MANNER:  (i) A notice of the intention to appear, (ii) a statement of such objections to any matter before the Court, and (iii) the grounds therefor or the reasons for such Person desiring to appear and to be heard, as well as all documents and writings which such Person desires the Court to consider, shall be filed by such Person with the Clerk of the United States District Court, Western District of Kentucky, 501 Broadway, Room 121, Paducah, KY 42001, and served by mail, express service or hand delivery on Settlement Class Counsel, and PMG's Counsel as identified on the Settlement website.

r.      The Court hereby schedules a Final Fairness Hearing to be held on **September 18, 2024**, at **11:00 AM CDT** before the Honorable Greg N. Stivers, Chief District Judge, in the United States District Court for the Western District of Kentucky, Paducah Division, located at the United States Courthouse, 501 Broadway, Room 121, Paducah, KY 42001, to consider the final approval of the Settlement Agreement and Settlement Class Counsel's fee petition.

s.      In the event there is a conflict between this Memorandum Opinion and Order and the Motion or the Settlement Agreement, this Memorandum Opinion and Order shall control and govern.

t.      The Court further orders:  (i) the terms of this Memorandum Opinion and Order shall be immediately effective and enforceable upon its entry, (ii) Plaintiffs are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Memorandum Opinion and Order, and (iii) Plaintiffs may, in their discretion and without further delay, take any action and perform any act authorized under this Memorandum Opinion and Order.

u.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Memorandum Opinion and Order.

Greg N. Stivers, Chief Judge

United States District Court

April 2, 2024

cc:      counsel of record