## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| WILLIAM BOWEN, AMY BRASHER, JESSE ROGERS, JOHN CHAMPION, JESSE GILSTRAP, and MARY BLEIER-TROUP, individually and on behalf of all others similarly situated, | Case No. 5:21-cv-00143- GNS-LLK |
| *Plaintiffs*, | |
| v. | |
| PAXTON MEDIA GROUP, LLC, | |
| *Defendant*. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
## <u>APPROVAL OF CLASS ACTION SETTLEMENT</u>

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ................................................. 2

III.    SUMMARY OF THE SETTLEMENT ..................................................................... 3

        A.    Settlement Benefits........................................................................................ 3

        B.    Notice and Administration Expenses ............................................................ 4

        C.    Attorneys' Fees, Expenses, and Service Awards .......................................... 4

IV.     THE SETTLEMENT WARRANTS FINAL APPROVAL ...................................... 4

        A.    The Settlement Satisfies All of the Rule 23(e)(2) Factors ........................... 5

          1.    The Class Was Adequately Represented. .................................................... 5

          2.    The Settlement Was Negotiated at Arm's Length......................................... 6

          3.    The Relief is Adequate Under Rule 23(e)(2)(C). ........................................ 6

          i.    The Costs, Risk, and Delay of Trial and Appeal. ........................................ 7

          ii.   The Method of Distributing Relief Is Effective. .......................................... 7

          iii.  The Terms Relating to Attorneys' Fees Are Reasonable. ............................ 8

          iv.   Any Agreement Required to be Identified Under Rule 23(e)(3)................... 8

          4.    The Proposed Settlement Treats Class Members Equitably. ....................... 8

        B.    The Sixth Circuit's *UAW* Factors Weigh in Favor of Final Approval. ........... 8

          1.    The Settlement Agreement is the Result of Informed, Non-Collusive, Arm's Length Negotiations Between the Parties................................................................... 9

          2.    The Complexity, Expense, and Likely Duration of the Litigation Favors Approval of the Settlement. ................................................................................................. 9

3.  The Parties Engaged in Sufficient Fact-Finding. ...................................................... 10

4.  The Settlement Provides Favorable Relief When Weighed Against the Likelihood of

    Success on the Merits. ............................................................................................... 11

5.  The Opinions of Class Counsel and the Class Representatives. ............................... 13

6.  The Reaction of Absent Settlement Class Members. ................................................ 14

7.  The Settlement Is in the Public's Interest................................................................... 15

V.   NOTICE SATISFIED DUE PROCESS AND RULE 23 ................................................... 15

VI.  CERTIFICATION OF THE SETTLEMENT CLASS ....................................................... 18

VII. CONCLUSION ............................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Bert v. AK Steel Corp.*,

    2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ........................................................................... 9

*Dick v. Sprint Commc'ns Co. L.P.*,

    297 F.R.D. 283 (W.D. Ky. 2014) ........................................................................... 9, 13

*Espinosa v. United Student Aid Funds, Inc.*,

    553 F.3d 1193 (9th Cir. 2008) ........................................................................... 18

*Fox v. Iowa Health Sys.*,

    2021 WL 826741 (W.D. Wis. Mar. 4, 2021) ........................................................................... 12

*Hammond v. The Bank of N.Y. Mellon Corp.*,

    2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June 25, 2010) ........................................................................... 12

*Hanlon v. Chrysler*,

    150 F.3d 1011 (9th Cir. 1998) ........................................................................... 14

*Hyland v. HomeServices of Am., Inc.*,

    No. 3:05-CV-612-R, 2012 WL 1575310 (W.D. Ky.) ........................................................................... 9

*In re Anthem, Inc. Data Breach Litig.*,

    327 F.R.D. 299 (N.D. Cal. 2018) ........................................................................... 14

*In re Cardizem CD Antitrust Litig.*,

    218 F.R.D. 508 (E.D. Mich. 2003) ........................................................................... 14, 15

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,

    2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) ........................................................................... 17

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,

    No. 3:08–MD01998, 2010 WL 3341200 (W.D. Ky.) ................................................. 13

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,

    248 F.R.D. 483 (E.D. Mich. 2008) ........................................................................... 10

*In re Employee Benefit Plans Sec. Litig.*,

    No. 3-92-708, 1993 WL 330595 (D. Minn. June 2, 1993) ......................................... 6

*In re Experian Data Breach Litig.*,

    No. SACV 15-01592 AG (DMFx), 2019 U.S. Dist. LEXIS 81243 (C.D. Cal. May 10, 2019) 13

*In re Hannaford Bros. Co. Cust. Data Sec. Breach Litig.*,

    293 F.R.D. 21 (D. Me. 2013) .................................................................................. 12

*In re Southeastern Milk Antitrust Litig.*,

    No. 2:08-md-1000, 2012 WL 2236692 (E.D. Tenn. June 15, 2012) ........................... 6

*In re Target Corp. Customer Data Sec. Breach Litig.*,

    No. 14-md-2522, 2017 WL 2178306 (D. Minn. May 17, 2017) ............................... 15

*In re Target Customer Data Sec. Breach Litig.*,

    No. MDL 14-2522 (D. Minn. Mar. 18, 2015) .......................................................... 13

*In re The Home Depot, Customer Data Sec. Breach Litig.*,

    No. 1:14-MD-2583 (N.D. Ga. Mar. 7, 2016) ........................................................... 13

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,

    266 F. Supp. 3d 1 (D.D.C. 2017) ............................................................................ 12

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Gen. Motors Corp.*,

    497 F.3d 615 (6th Cir. 2007) ................................................................................... 11

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*,

    No. 07-CV-14074-DT, 2008 WL 2968408 (E.D. Mich. July 31, 2008) ................................ 11

*Jackson v. Nationwide Ret. Sols., Inc.*,

    No. 2:22-CV-3499, 2024 WL 958726 (S.D. Ohio Mar. 5, 2024)........................................... 12

*Kritzer v. Safelite Solutions, LLC*,

    2012 WL 1945144 (S.D. Ohio May 30, 2012) ................................................................ 10, 11

*Leonardo's Pizza by the Slice, Inc. v. Wal–Mart Stores, Inc.*,

    544 U.S. 1044 (2005).......................................................................................................... 6

*Leonhardt v. ArvinMeritor, Inc.*,

    581 F.Supp.2d 818 (E.D. Mich. 2008)................................................................................ 9

*Luevano v. Campbell*,

    93 F.R.D. 68 (D.D.C. 1981)............................................................................................... 14

*Massiah v. MetroPlus Health Plan, Inc.*,

    2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012).................................................................. 14

*Mullane v. Central Hanover Bank & Trust Co.*,

    339 U.S. 306 (1950)......................................................................................................... 15

*Olden v. Gardner*,

    294 F. App'x 210 (6th Cir. 2008) ..................................................................................... 14

*Phillips Petroleum Co. v. Shutts*,

    472 U.S. 797 (1985)......................................................................................................... 15

*Senter v. Gen. Motors Corp.*,

    532 F.2d 511 (6th Cir. 1976). ............................................................................................. 5

*Stott v. Capital Financial Services*,

    277 F.R.D. 316 (N.D. Tex. 2011) ............................................................. 17

*Thomsen v. Morley Companies, Inc.*,

    No. 1:22-CV-10271, 2023 WL 3437802 (E.D. Mich. May 12, 2023) ..................................... 12

*UAW v. Gen. Motors Corp.*,

    2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ........................................................ 10

*UAW v. Gen. Motors Corp.*,

    497 F.3d 615 (6th Cir. 2007) .......................................................... 5

*UAW. v. Ford Motor Co.*,

    No. 07-CV-14845, 2008 WL 4104329 (E.D. Mich. Aug. 29, 2008) ...................................... 13

*Williams v. Vukovich*,

    720 F.2d 909 (6th Cir. 1983) ............................................................ 4

## **Rules**

Fed. R. Civ. P. 23 ........................................................................ passim

## **Treatises**

MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995) ........................................ 6

## I.    INTRODUCTION

On April 3, 2024, the Court granted preliminary approval of the Settlement between Plaintiffs William Bowen, Amy Brasher, Jesse Rogers, John Champion, Jesse Gilstrap, and Mary Bleier-Troup (collectively, "Plaintiffs") and Defendant Paxton Media Group, LLC ("Defendant" or "Paxton"), and ordered that notice be given to the Class. (ECF No. 75).[1] The Settlement provides up to $1,000,000 to Settlement Class Members from which substantial and immediate benefits will be provided to the Settlement Class consisting of 20,816 Class Members. This is an outstanding result for Plaintiffs and the Settlement Class.

The Settlement makes the following monetary relief available to all Settlement Class Members: (i) compensation up to $2,500 for Ordinary Losses; and (ii) compensation for Extraordinary Losses up to $4,200. (SA, ¶ 3.1). In addition, all Settlement Class Members may enroll in three (3) years of credit monitoring services through IDX. (*Id.* ¶ 3.3). All Settlement Class Members will also benefit from meaningful business practice changes and remedial measures designed to secure PII within Paxton's network and prevent similar data security incidents from occurring in the future. (*See id.* ¶ 3.4).

The Parties reached this Settlement—providing meaningful benefits for the Settlement Class—after extensive investigation, hard-fought litigation, and arm's-length negotiations. Although Plaintiffs and Class Counsel believe in the merits of their claims, Defendant denies every claim alleged against it in the litigation, including all wrongdoing or liability. The claims involve the intricacies of data security litigation (a fast-developing area in the law), and Plaintiffs would face significant risks at each stage of litigation. Against these risks, Class Counsel and

---

[1] Unless otherwise stated, all capitalized terms shall have the definitions set forth in the Settlement Agreement (ECF No. 74-1). Citations to the Settlement Agreement will be abbreviated as "SA, ¶ ___."

Plaintiffs believe that the Settlement achieved is for the benefit of the Settlement Class.

After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties—disseminated Notice to the Settlement Class. Individual direct notice was provided directly to the Settlement Class Members and successfully reached 83.11% of the Class. (*See* Declaration of Steven Rogers Re: Notice and Administration ("Angeion Decl."), ¶ 11 (attached as **Exhibit 1** to the Joint Declaration of William B. Federman and Lori G. Feldman ("Joint Decl."), filed concurrently herewith)). In addition, Class Counsel provided notice of the Settlement in The Paducah Sun, a local newspaper, on June 12th, 19th, 26th, and July 3rd (Joint Declaration, ¶ 17) and Paxton published notice of the Settlement in all newspapers it owned as of the date of the Data Security Incident. (SA, ¶ 5.2; Angeion Decl., ¶ 12). Out of the 20,816 Settlement Class Members, **_no_** Class Member has sought to be excluded from the Settlement, and **_no_** Class Member has objected to the Settlement. (Angeion Decl., ¶ 19).

Plaintiffs now move the Court for final approval. Nothing has changed since the Court granted preliminary approval, other than the notice plan has been successfully executed and there have been no objections or exclusions. The Settlement meets all the criteria for final approval.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to, and hereby incorporate by reference, Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (ECF No. 73), Plaintiffs' Memorandum of Law in Support of Settlement Class Representatives' Motion for Attorneys' Fees, Expenses, and Service Awards (ECF No. 78), and Joint Declaration of Lori G. Feldman and William B. Federman in Support of Settlement Class Representatives' Motion for Attorneys' Fees, Expenses, and Service Awards (ECF No. 79).

### III.    SUMMARY OF THE SETTLEMENT

Under the Settlement, Defendant agrees to make available $1,000,000, from which numerous benefits to the Settlement Class will be provided. (SA, ¶ 3.2.).

### A. Settlement Benefits

The Settlement Class consists of 20,816 members. (Angeion Decl., ¶ 6). Pursuant to the Settlement, Class Members have the opportunity to submit a Claim for the following Settlement benefits:

Claim A: Compensation for Ordinary Losses. Paxton will reimburse documented out-of-pocket expenses incurred as a result of the Data Security Incident, up to a maximum of $2,500 per person upon submission of a claim and supporting third-party documentation. (SA, ¶ 3.1(a)). These losses include: (i) bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel; (ii) fees for credit reports, credit monitoring, or other identity theft insurance product purchased between March 20, 2021, and the close of the Claims Period; and (iii) compensation for up to four hours of lost time, at $22.50/hour, provided that the claimant certifies under penalty of perjury that the lost time was spent in response to the Data Security Incident and provides a written description of the time spent. (*Id.* ¶ 3.1(a)(i)–(iii)).

Claim B: Compensation for Extraordinary Losses. Additionally, Settlement Class Members may submit a claim for reimbursement for Extraordinary Losses up to $4,200.00. (*Id.* ¶ 3.1(b)). To receive this reimbursement, a Class Member must submit a valid Claim Form that includes sufficient supporting documentation that the loss was more likely than not caused by the Data Security Incident, has not yet been reimbursed, and occurred between March 20, 2021, and the close of the Claims Period. (*Id.*). The maximum amount to be paid by Paxton for Claims A and B is capped at $1,000,000. (*Id.* ¶ 3.2).

Identity Theft Protection. All Settlement Class Members are eligible to receive three (3) years of credit monitoring and identity-protection services through IDX upon submission of a valid Claim Form. Identity Protection Services through IDX provides single bureau credit monitoring, dark web monitoring, $1 million reimbursement insurance, fully managed identity recovery and lost wallet assistance. (*Id.* ¶ 3.3).

Remedial Measures. In addition to the foregoing benefits, Paxton will continue to provide security for employees' PII and agreed to pay for such remedial costs separate and apart from the settlement benefits. (*Id.* ¶ 3.4). These remedial measures will inure to the benefit of the Settlement Class because their information remains in Defendant's possession.

### B. Notice and Administration Expenses

All Notice and Claims Administration Costs will be paid by Paxton, completely separate and apart from the Aggregate Monetary Recovery Cap and will not affect the monetary relief available to the Settlement Class. (*Id.* ¶ 4.1).

### C. Attorneys' Fees, Expenses, and Service Awards

Class Counsel have moved the Court for an award of their reasonable attorneys' fees and costs in the amount of $350,000 and Service Awards to Plaintiffs of $1,500 each. (ECF Nos. 77, 78, 79). Any attorney's fees, costs, and service awards approved by the Court are not included in the Aggregate Monetary Recovery Cap and will not affect the monetary relief available to the Settlement Class. (SA, ¶¶ 3.6–3.7).

## IV.    THE SETTLEMENT WARRANTS FINAL APPROVAL

The Federal Rules of Civil Procedure ("Rule") require judicial approval of class action settlements. Fed. R. Civ. P. 23(e). At the final approval stage, the ultimate issue is whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). Courts within the Sixth Circuit recognize a strong "federal

policy favoring settlement of class actions." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (citation omitted).

Rule 23(e)(2) provides factors for the Court to determine if a settlement is "fair, reasonable, and adequate." The Rule 23(e)(2) factors are: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed attorney's fee, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

In addition to these factors, the Sixth Circuit has laid out its own factors to consider. *See UAW*, 497 F.3d at 631. They are: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Id.*

The Settlement before the Court meets each of these considerations, meriting final approval.

**A.  The Settlement Satisfies All of the Rule 23(e)(2) Factors**

**1.  The Class Was Adequately Represented.**

The adequacy requirement of Rule 23(e)(2)(A) is satisfied where (1) the representative has common interests with unnamed members of the class, and (2) it appears that the representatives will vigorously prosecute the interests of the class through qualified counsel. *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976). Here, the Class Representatives

have the same interests as all other Settlement Class Members, as they are asserting the same claims and share the same injuries. Further, the Court has already recognized Class Counsel's experience and qualifications in appointing them to lead this litigation, and the record shows Class Counsel worked diligently to litigate and ultimately bring this case to resolution. (*See* Order Granting Preliminary Approval, ECF No. 75).

### 2. The Settlement Was Negotiated at Arm's Length.

The negotiations in this matter occurred at arm's length. (Joint Decl., ¶ 8.). Settlements reached by experienced counsel that result from arm's-length negotiations are presumed to be fair, adequate and reasonable. *See Leonardo's Pizza by the Slice, Inc. v. Wal–Mart Stores, Inc.*, 544 U.S. 1044 (2005) ("'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery'") (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995)). This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e).

### 3. The Relief is Adequate Under Rule 23(e)(2)(C).

The relief offered to Settlement Class Members in the proposed Settlement addresses the types of repercussions and injuries arising from the Data Security Incident and is more than adequate under the factors outlined in Rule 23(e)(2)(C).

Class Counsel, who have meaningful experience in leading major data breach class actions, strongly believe that the relief is fair, reasonable, and adequate. The Court may rely upon such experienced counsel's judgment. *See, e.g.*, *In re Southeastern Milk Antitrust Litig.*, No. 2:08-md-1000, 2012 WL 2236692, at *3 (E.D. Tenn. June 15, 2012) (giving "substantial weight to the opinion of plaintiffs' experienced trial counsel"); *In re Employee Benefit Plans Sec. Litig.*, Civ. No. 3-92-708, 1993 WL 330595, at *5 (D. Minn. June 2, 1993) ("The Court is entitled to

rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement.");

### i.    *The Costs, Risk, and Delay of Trial and Appeal.*

As outlined in the Preliminary Approval Motion (ECF No. 73) and Motion for Attorneys' Fees (ECF No. 78), Plaintiffs and the Class would have faced significant risks and costs if they had continued to litigate the case. First, there was a risk that Plaintiffs' claims would not have survived, in part or full, on a class-wide basis after a motion for class certification, motions for summary judgment, *Daubert* motions on damages methodologies, and other motions. Second, if Plaintiffs prevailed on a motion for class certification, successfully defeated all of Defendant's other objections and motions, and proceeded to trial, Plaintiffs would have still faced significant risk, cost, and delay, including likely interlocutory and post-judgment appeals.

Comparing the risk, cost, and delay posed by proceeding to trial, the proposed Settlement provides certain, substantial, and immediate relief to the proposed Settlement Class. It ensures that Settlement Class Members with valid claims for Ordinary Losses or Extraordinary Losses will receive guaranteed cash compensation and provides Settlement Class Members with access to credit monitoring and identity theft protection services (benefits that may not have been available at trial). The substantial cost, risk, and delay of the trial and appeal process support a finding that the proposed Settlement is adequate.

### ii.    *The Method of Distributing Relief Is Effective.*

The proposed distribution process is efficient and effective. The available relief is detailed clearly in the Notice, which was provided to all Settlement Class Members, laying out the benefits to which they are entitled.

The Notice to the Settlement Class of the available relief was also efficient and effective. The Notice Program included dissemination of individual notices by direct mail. (Angeion Decl.,

¶ 7). This direct mail notice reached 83.11% of the Class. (*Id.* ¶ 11). This is in addition to the publication notice that was issued via newspapers. (*Id.* ¶ 11; Joint Declaration, ¶ 17). Therefore, Settlement Class Members received effective and efficient notice of the relief offered. Because Settlement Class Members were able to make claims through a simple online form or by mail, the method of distributing the relief is efficient and effective, and the proposed Settlement is adequate under this factor.

### iii.    The Terms Relating to Attorneys' Fees Are Reasonable.

Class Counsel requested $350,000 in attorneys' fees and expenses. This request is on par with awards routinely granted by courts in the Sixth Circuit and is supported by a lodestar crosscheck, as laid out in the previously filed Attorneys' Fee Motion. (ECF No. 78). This factor supports approval of the proposed Settlement.

### iv.    Any Agreement Required to be Identified Under Rule 23(e)(3).

Apart from the Settlement Agreement, there are no additional agreements between the Parties or with others made in connection with the Settlement. Accordingly, this factor weighs in favor of final approval of the Settlement.

### 4.  The Proposed Settlement Treats Class Members Equitably.

The Settlement Class Members are treated equitably because they all have similar claims arising from the same Data Security Incident, and they are all treated the same under the Settlement. Fed. R. Civ. P. 23(e)(2)(D). All Settlement Class Members are eligible to claim the various benefits provided by the Settlement, including compensation for Ordinary Losses, Extraordinary Losses, and three (3) years of identity protection and credit monitoring services.

Accordingly, the factors under Rule 23(e) support final approval. As discussed below, the *UAW* factors are similarly satisfied.

### B.  The Sixth Circuit's *UAW* Factors Weigh in Favor of Final Approval.

    **1.  The Settlement Agreement is the Result of Informed, Non-Collusive, Arm's Length Negotiations Between the Parties.**

The first factor heavily weighs in favor of granting final approval. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 295 (W.D. Ky. 2014) (*citing Leonhardt v. ArvinMeritor, Inc.*, 581 F.Supp.2d 818, 838 (E.D. Mich. 2008)). Negotiations overseen by a neutral mediator are given extra weight. *See Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("[P]articipation of an independent mediator in settlement negotiations virtually insures (sic) that the negotiations were conducted at arm's length and without collusion between the parties").

This Settlement was achieved only after significant litigation, the exchange of pre-mediation discovery, detailed mediation statements, and a full-day mediation session with highly respected mediator, Bennet G. Picker. Mr. Picker has substantial experience mediating and resolving complex class actions, including data breach class action settlements. (*See* Joint Decl., ¶¶ 7–8). Mr. Picker's active involvement ensured that the negotiations proceeded at arm's length. Indeed, it was not until after an all-day mediation with hard bargaining on both sides that a settlement was ultimately reached by the Parties. (*Id.* ¶ 8).

    **2.  The Complexity, Expense, and Likely Duration of the Litigation Favors Approval of the Settlement.**

The second factor the Sixth Circuit evaluates also supports final approval. *See Hyland v. HomeServices of Am., Inc.*, No. 3:05-CV-612-R, 2012 WL 1575310, at *6 (W.D. Ky.) ("In evaluating a proposed class settlement, the Court must also weigh the risks, expense and delay the plaintiffs would face if they continued to prosecute the litigation through trial and appeal." (citation omitted)). "For class actions in particular, courts view settlement favorably because it avoids the costs, delays and multitudes of other problems associated." *In re Delphi Corp. Sec., Derivative &*

*"ERISA" Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008).

This action has been pending for nearly three (3) years and has already involved a contested motion to dismiss, amended complaints, and the exchange of informal discovery. Absent settlement, this case could continue to drag on for many more years to come. Continued pre-trial litigation would be extensive, with voluminous discovery needed from Paxton and any third-party companies that Paxton has used in an information technology capacity. Experts would be required to testify regarding Paxton's data security practices and how they compare to industry standard practices. Substantial fact-finding would be required into what information that was taken, how it was taken, and the type of impact this has had, and will continue to have, on the Settlement Class. Plaintiffs would need to survive potential dispositive motions and prevail on a motion for class certification. Such motion practice, and potential appeals, could consume years, during which the law could change and threaten the claims. Given the complexity of the claims and arguments here, a lengthy trial would likely follow. Litigation would be extraordinarily complex, and it could take several years for the Class to see any real recovery, if any at all. Thus, this factor favors approval. *See UAW v. Gen. Motors Corp.*, 2006 WL 891151, at *17 (E.D. Mich. Mar. 31, 2006) ("The obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement.").

### 3. The Parties Engaged in Sufficient Fact-Finding.

Next, the Court examines whether Plaintiffs have enough information to "adequately assess their case and the desirability of the proposed settlement" at this stage of the proceedings. *Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012). Courts often "defer to the judgment of experienced trial counsel with regard to the evaluation of the strength of the case and the desirability of settlement at this stage of the proceeding." *Id.*

Here, although the Parties reached a proposed settlement before the end of the discovery

period, Class Counsel made an informed decision regarding the appropriateness of settlement. Prior to negotiating the Settlement, Class Counsel sought and obtained informal discovery from Paxton on a number of topics, including: the number of individuals whose PII was compromised during the Data Incident; the types of PII potentially compromised; the mechanics of the Data Security Incident; the remedial actions Paxton took after the Data Security Incident; and the terms of any potentially applicable insurance coverage. (Joint Decl., ¶¶ 7, 13). Class Counsel thoroughly evaluated this information in their analysis of damages. (*Id.*). Through the above process and the mediation, Class Counsel came to understand the Data Security Incident and the issues arising from it and obtained an excellent settlement for the Settlement Class Members. (*Id.*); *see also Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, No. 07-CV-14074-DT, 2008 WL 2968408, at *26 (E.D. Mich. July 31, 2008) (noting the use of informal discovery as an adequate tool for class counsel to make an informed decision). Combined with their experience and the fact that the Court had already ruled on Defendant's motion to dismiss, Class Counsel had all the information needed to "adequately assess the [] case and the desirability of the proposed settlement." *See Kritzer*, 2012 WL 1945144, at *7. Thus, the Court should find that Class Counsel conducted sufficient fact-finding.

### 4. The Settlement Provides Favorable Relief When Weighed Against the Likelihood of Success on the Merits.

To "judge the fairness of a proposed compromise," a court "weigh[s] the Plaintiffs' likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). While Plaintiffs are confident in their claims, proceeding to trial presents real risk, as is true in all complex class actions—and this area of law is especially risky. Historically, data breach cases face substantial hurdles in surviving even the

pleading stage. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 U.S. Dist. LEXIS 71996, at *2–4 (S.D.N.Y. June 25, 2010) (collecting cases). Even cases implicating more sensitive data have been found insufficient at the district court level. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) (finding that the factual allegations in the complaints were insufficient to establish standing), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that Plaintiffs had standing). As another court observed when approving a settlement with similar class relief, "[d]ata breach litigation is evolving; there is no guarantee of the ultimate result. . . . [they] are particularly risky, expensive, and complex." *Fox v. Iowa Health Sys.*, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021).

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. Given the risk and uncertainty, settlement is the more prudent course when a reasonable agreement can be reached. The damages methodologies in this case, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. And as in any data breach case, establishing causation on a class-wide basis is rife with uncertainty. *See, e.g., In re Hannaford Bros. Co. Cust. Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).

In light of the above, the $1,000,000 in benefits achieved for the Settlement Class is an outstanding result. (Joint Decl., ¶¶ 9, 11, 22). The Settlement Fund amounts to approximately ***$48.04 per Settlement Class Member*** and far exceeds data breach settlements approved by Courts in this Circuit. *See Thomsen v. Morley Companies, Inc.*, No. 1:22-CV-10271, 2023 WL 3437802 (E.D. Mich. May 12, 2023) (approving a data breach settlement fund of $4.3 million for a class of 701,280 individuals, amounting to $6.13 per class member); *Jackson v. Nationwide Ret. Sols., Inc.*, No. 2:22-CV-3499, 2024 WL 958726, at *1 (S.D. Ohio Mar. 5, 2024) (providing two years of credit monitoring services to class members). This Settlement also far exceeds data breach

settlements regularly approved by courts outside of this Circuit as well. *See, e.g., In re Target Customer Data Sec. Breach Litig.*, No. MDL 14-2522 (D. Minn. Mar. 18, 2015) ($0.17 per class member); *In re The Home Depot, Customer Data Sec. Breach Litig.*, No. 1:14-MD-2583 (N.D. Ga. Mar. 7, 2016) (approximately $0.51 per class member); *In re Experian Data Breach Litig.*, No. SACV 15-01592 AG (DMFx), 2019 U.S. Dist. LEXIS 81243, at *25 (C.D. Cal. May 10, 2019) (noting that the settlement provided a $1.47 payout per person, "which compares favorably to other approved data breach settlements") (collecting cases showing same). The settlements in similar data breach class actions underscore Plaintiffs' exemplary resolution for the Settlement Class.

Based on Class Counsel's experience in similar cases, the Settlement Fund and the meaningful business practice changes provide ample compensation for Settlement Class Member's legitimate individual claims and for class-wide claims in the aggregate. (Joint Decl., ¶ 22).

### 5.  The Opinions of Class Counsel and the Class Representatives.

"The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement." *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 297 (W.D. Ky. 2014) (citing *UAW. v. Ford Motor Co.*, No. 07-CV-14845, 2008 WL 4104329, at *18 (E.D. Mich. Aug. 29, 2008)); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08–MD01998, 2010 WL 3341200, at *4 (W.D. Ky.) ("Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate....").

Here, Class Counsel and Plaintiffs strongly support the Settlement. (Joint Decl., ¶¶ 21–22). They do so because, as explained herein, this Settlement is an excellent result for Settlement Class Members in light of the risks of continued litigation, particularly when compared to similar data breach settlements. This *UAW* factor therefore also favors final approval.

13

### 6. The Reaction of Absent Settlement Class Members.

In most class action settlements, a small number of opt-outs and objections "are to be expected" and do not impact the Settlement's fairness. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) (citations omitted); *see also Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (inferring that most "class members had no qualms" with a settlement in which 79 out of 11,000 class members objected). But here, absolutely **_no_** class members objected to any aspect of the Settlement. (Angeion Decl., ¶ 19). Similarly, absolutely **_no_** class members requested exclusion from the Settlement. (*Id.*). This *UAW* factor therefore heavily weighs in favor of final approval. *See, e.g.*, *Hanlon v. Chrysler*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. Nov. 20, 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness."); *Luevano v. Campbell*, 93 F.R.D. 68, 91 (D.D.C. 1981) ("The fact that only one-sixth of one percent of the class has chosen to object to the settlement is an important indication of its fairness and adequacy.").

The Settlement Class's reaction to the Settlement was very positive and strongly supports final approval. The claims deadline was August 1, 2024. (Angeion Decl., ¶ 17). A total of 693 claims were received from Settlement Class Members. (*Id.*). Subject to a final audit review by the Claims Administrator, the current approximate claims rate is 3.33% based upon the total notice population of 20,816, or 4.01% based on the presumed successfully delivered notice count of 17,300 Class Members. (*Id.* ¶ 18). This claims rate compares favorably to the claims rates in other data breach class action settlements. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (finding that a 1.8% claims rate reflects a positive reaction by the

14

class); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md-2522, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017), *aff'd*, 892 F.3d 968 (8th Cir. 2018) (approving settlement with a claims rate of roughly 0.23%).

### 7. The Settlement Is in the Public's Interest.

Finally, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously different and unpredictable and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 530. The settlement of a class action affecting approximately 20,816 people is consistent with the public interest, as it conserves judicial resources and ensures uniformity.

All the *UAW* factors weigh in favor of approval, and the Settlement Agreement is fair, reasonable, adequate, and not a product of collusion. The Court should therefore grant final approval.

### V.    NOTICE SATISFIED DUE PROCESS AND RULE 23

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of Rule 23 and Due Process. (ECF No. 75). That plan has now been fully carried out by the Claims Administrator, Angeion. (Angeion Decl., ¶ 2). As outlined in detail in Angeion's supporting declaration, the Notice Plan and its execution satisfied all the requirements of Rule 23(c).

To satisfy due process, notice to class members must be the best practicable method and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). While

individual notice should be provided when class members can be located and identified through reasonable effort, notice may be provided by U.S. mail, electronic mail, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B).

After preliminary approval of the Settlement was received, Paxton provided Angeion with a data file containing 20,835 Class Member records. (Angeion Decl., ¶ 6). The data file contained the names and mailing addresses of Class Members. (*Id.*). Angeion reviewed the data file and removed duplicative records, resulting in 20,816 unique records. (*Id.*). On May 3, 2024, Angeion mailed notice of the Settlement to 20,816 Class Members. (*Id.* ¶ 7). Prior to mailing, the Class Member addresses were processed through the USPS National Change of Address database to identify updated addresses for individuals who have moved within the last four years and who filed a change of address card with the USPS. (*Id.* ¶ 8). Postcard Notices that were returned by the USPS as undeliverable with a forwarding address were re-mailed to that forwarding address. (*Id.* ¶ 9). Postcard Notices that were returned by the USPS without a forwarding address were subjected to an address verification search ("skip trace") in an attempt to locate an updated address. (*Id.*). As a result of the above-described efforts, of the 5,750 Postcard Notices returned as undeliverable by the USPS, 2,674 were re-mailed to updated addresses. (*Id.*). Of the 2,674 Postcard Notices sent to updated addresses, 440 were returned by the USPS. (*Id.*). On July 18, 2024, Angeion caused a reminder notice to be mailed via USPS first class mail, postage prepaid, to 20,458 Class Members. (*Id.*). Angeion estimates approximately 83.11% of Class Members are presumed to have successfully been delivered notice of the Class Action Settlement. (*Id.* ¶ 11).

In addition to direct notice, Settlement Class Members were also subject to publication notice. Paxton's counsel informed Angeion that Paxton published notice of the Settlement pursuant to the requirements in § 5.2 of the Class Action Settlement Agreement and provided Angeion with screenshots of the published notice, which are attached to Angeion's Declaration as Exhibit D. (*Id.*

16

¶ 12). Class Counsel also provided notice of the Settlement in The Paducah Sun, a local newspaper, on June 12th, 19th, 26th, and July 3rd. (Joint Decl., ¶ 17). The direct mail Notice in conjunction with publication notice, utilized here, is the gold standard and is consistent with notice programs approved by other courts. *See In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009) (finding a notice plan where a combination of mail and publications notice reached 81.8% of the class to be "the best notice practicable"); *Stott v. Capital Financial Services*, 277 F.R.D. 316, 342 (N.D. Tex. 2011) (approving notice sent to all class members by first class mail).

Additionally, the Claims Administrator established a case-specific website, www.PaxtonMediaDataSettlement.com, where Class Members are able to securely file a claim directly on the website or download and print the Claim Form to be completed and mailed to the Claims Administrator. (Angeion Decl., ¶ 13). Class Members could also easily view general information about the Settlement, review relevant Court documents, and view important dates and deadlines pertinent to the Settlement. (*Id.*). This case-specific Settlement Website was designed to be user-friendly and easy for Settlement Class Members to find answers to frequently asked questions. (*Id.*). The Settlement Website also contained a contact form whereby Class Members could send any additional questions to a dedicated email address, info@PaxtonMediaDataSettlement.com. (*Id.*). Settlement Class Members could also call a toll-free number specifically dedicated to the Settlement to listen to an interactive voice response that provided Settlement Class Members with answers to frequently asked questions. (*Id.* ¶ 15).

The Notice adequately informed Settlement Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves and/or enter an appearance through an attorney, and the binding effect of final approval and class judgment. (*See* Angeion Decl. at Exs. A–D). The Notice utilized clear and concise

language that is easy to understand and was organized in a way that allowed Settlement Class Members to easily find any section that they may be looking for. (*See id.*). Therefore, the notice provided to Settlement Class Members was substantively adequate. *See Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1202 (9th Cir. 2008), aff'd, 559 U.S. 260, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010) ("The standard for what amounts to constitutionally adequate notice, however, is fairly low; it's 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection.'").

The Notice program implemented here was robust, effective, and met all due process requirements, as well as the requirements of Rule 23(c). This weighs in favor of final approval as well.

## VI.    CERTIFICATION OF THE SETTLEMENT CLASS

In the Preliminary Approval Order, the Court preliminarily certified the Settlement Class, finding that the Class satisfies all Rule 23 requirements. (ECF No. 75). Nothing has changed since that finding that could conceivably undermine class certification. Accordingly, Plaintiffs respectfully requests that the Court finally certify the Settlement Class for Settlement purposes.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the [Proposed] Final Approval Order and Final Judgment (ECF No. 81-1) granting final approval of the Settlement.

Dated: September 4, 2024                          Respectfully submitted,

                                                  */s/ William B. Federman*
                                                  William B. Federman (*pro hac vice*)
                                                  **FEDERMAN & SHERWOOD**
                                                  10205 N. Pennsylvania Avenue
                                                  Oklahoma City, OK 73120
                                                  Tel.: (405) 235-1560
                                                  wbf@federmanlaw.com

Lori G. Feldman*
**GEORGE FELDMAN MCDONALD, PLLC**
102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520
Phone: (917) 983-9321
Fax: (888) 421-4173
Email: LFeldman@4-Justice.com
E-Service: eService@4-Justice.com

David J. George*
Brittany L. Brown*
**GEORGE FELDMAN MCDONALD, PLLC**
9897 Lake Worth Road, Suite #302
Lake Worth, FL 33467
Phone: (561) 232-6002
Fax: (888) 421-4173
Email: DGeorge@4-Justice.com
BBrown@4-Justice.com
E-Service: eService@4-Justice.com

Jeffery A. Roberts (KBA Bar # 84344)
**ROBERTS LAW OFFICE**
509 Main Street
Murray, Ky. 42071
Phone: 270-753-0053
Email: jeff@jeffrobertslaw.com

*Attorneys for Plaintiffs and the Putative Class*

*Admitted pro hac vice*

19

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ William B. Federman*
William B. Federman